BUTTE COPPER & ZINC CO. et al. v.
AMERMAN et al.
No. 11224.

Circuit Court of Appeals, Ninth Circuit.
Sept. 24, 1946.

See also D.C., 5 F.R.D. 30.

W. H. Hoover, R. H. Glover, John V. Dwyer, J. T. Finlen, Jr., Sam Stephenson, Jr., and Kendrick Smith, all of Butte, Mont., for appellants.

Earle N. Genzberger, H. L. Maury, and A. G. Shone, all of Butte, Mont., for appellees.

Before DENMAN, BONE, and ORR, Circuit Judges.

ORR, Circuit Judge.

Appellees, seeking recovery for damages to a building owned by them in the city of Butte, Montana, brought this suit against appellants, owners and operators of a mine upon a portion of the surface of which the building in suit is situated. Sub-surface mining operations were carried on by appellants in the Emma mine, those nearest the surface being conducted at the 300-foot level. This suit is based upon the theory that blasting in the mine, a necessary operation in mining, caused the damage and, further, that the said mining operations caused the subsidence of the surface of the area in and around the building. Voluminous testimony was introduced at the trial, both on behalf of appellants and appellees.

At the conclusion of the introduction of the evidence appellees moved the court to direct the jury to find in their favor. The court granted the motion and withdrew from the consideration of the jury all issues with the exception of the amount of damages. Our problem is to determine whether the trial court was legally justified in the action taken. We approach the consideration of the question with the following settled principles in mind.

A court on request for a directed verdict may not weigh the evidence. If there is substantial evidence both for the plaintiff and defendant it is for the jury to

determine what facts are established.[1] This is true even though their verdict be against the decided preponderance of the evidence. United States Fidelity & Guaranty Co. v. Blake, 9 Cir., 285 F. 449, 452; certiorari denied 262 U.S. 748, 43 S.Ct. 523, 67 L.Ed. 1213.

The court, on motion for directed verdict, is not confronted with the question of whether there is "literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Improvement Co. v. Munson, 81 U.S. 442, 448. So, if there is substantial, relevant evidence in favor of the party against whom the motion for directed verdict is made, it is error for the trial court to grant the motion directing the verdict.[2] What constitutes substantial evidence?

The United States Supreme Court in Consolidated Edison Co., et al., v. N. L. R. B., 305 U.S. 197, 229, 59 S.Ct. 206, 217, 83 L.Ed. 126, defined it as follows: "Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

The substance of the evidence relied on by appellants is in part as follows: The Amerman building (the building alleged to have been damaged), according to the testimony of three long time residents of the district, was built over part of an area known as Buffalo Gulch. This gulch was at one time used as a city dumping ground. Before the gulch was filled in a stream of water ran through the bottom thereof; also, before the fill was made a storm sewer was built in the stream bed. This storm sewer was approximately four feet wide by six feet high and was built of stone with a semi-circular arch-type roof. This sewer passed under the Amerman building, close to its center. There is testimony to the effect that Buffalo Gulch was filled with "garbage", "refuse from people's back yards" and "whatever you have to get rid

of", "tin cans", "water", "barrel hoops" and "everything else". This mass was "coated over with dirt and rock and stuff". We quote the exact words of the witnesses because we think the jury could have reasonably inferred therefrom that the building was erected upon a very unstable and insecure foundation, incapable of sustaining the great weight involved. There was testimony that the Amerman building had settled toward its center, with floors sagging in the middle toward the storm sewer. Certain testimony fixed the location of the storm sewer at a point beneath the Amerman building; that said storm sewer was resting on bed rock and that said sewer had remained intact (aside from some natural disintegration of the mortar) and that the sewer had never been involved in any ground movement.

The permissible inference from this testimony is: That had there been a general ground subsidence, caused, as alleged, by mining operations, the storm sewer would of necessity have been damaged. Other testimony on behalf of appellants was to the effect that no cracks appear in the foundation of the building; "no crevice runs into or under the building." Witnesses Arnold, O'Kelly and O'Connell "saw a 10 or 12 inch pipe entering the storm sewer and saw that the second joint of the pipe from the sewer had settled down 3 or 4 inches and contained mud and silt. This sinking was not the result of ground movement, but of settlement in the fill. On a point near the sewer Arnold and O'Kelly found that the building had settled (toward its center) about 2-1/4 to 2-1/2 inches, the center beam about 4-1/2 inches. This was reflected throughout the entire building. This was one of the reasons according to Arnold for the unevenness of floors and doors and for cracks in the walls. The floors sagged in the middle toward the storm sewer."

Further testimony was to the effect that other natural causes accounted for the condition of the building: "Normal shrinkage of wood cap, girder and joist, placing of

---

[1] See Tennant v. Peoria & P. U. Ry., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520.

[2] United States v. Burke, 9 Cir., 50 F. 2d 653, 656; Corrigan v. United States, 9 Cir., 82 F.2d 106, 109, 110; United States v. Hartley, 9 Cir., 99 F.2d 923, 925.

posts supporting central beam on foundations resting on filled ground, and rotting of 4" x 4" laid on ground, all contributed to unevenness of floors of building and cracks in walls. Shrinking of the cap, girder and joist caused the floors to settle toward the center of the building."

Counsel for appellants make what we deem a fair summary of the evidence on subsidence when they say:

"(1st) That no cracks appear in the foundation of the building;

"(2nd) That no crevice runs into or under this building;

"(3rd) That the storm sewer running north and south on the bottom of the gulch under the building was not subsided in any way;

"(4th) That the building is on filled ground;

"(5th) That this filled ground has settled; and

"(6th) That there was a normal shrinkage of the wood caps, girders, and joists running through and supporting the center of the building."

We think appellants' evidence, a brief summary of which has been set out, was sufficiently substantial to have required submission of the case to the jury. An examination of all the evidence convinces us that the conflicts could not be resolved and a correct conclusion reached without weighing the evidence. The evidence is not so overwhelming that but one conclusion could be drawn from it. We find no merit in appellants' contention that a verdict in their favor should have been directed.

Judgment reversed.