## HILL v. RAILWAY EXP. AGENCY, Inc.
### No. 10153.

United States Court of Appeals
Seventh Circuit.

Heard Nov. 7, 1950.

Decided Dec. 29, 1950.

Rehearing Denied March 19, 1951.

Fulmer Long, Chicago, Ill., Charles F. White, Herbert C. De Young, Chicago, Ill. for appellant.

James A. Dooley, Chicago, Ill., for appellee.

Before MAJOR, Chief Judge, and KERNER and DUFFY, Circuit Judges.

MAJOR, Chief Judge.

This is an appeal from a judgment rendered upon the verdict of a jury which assessed plaintiff's damages in the sum of $60,000.00. The action was for personal injuries sustained by plaintiff when the tractor-trailer of the defendant came in contact with a bicycle on which plaintiff was riding. The accident occurred on June 30, 1947, a short distance south of the intersection of Cottage Grove Avenue, which extends in a

northerly and southerly direction, and East Oakwood Boulevard, which extends in an easterly and westerly direction, in the city of Chicago. On Cottage Grove Avenue are two street car tracks, the easterly for northbound and the westerly for southbound street car traffic. Plaintiff, a fourteen year old boy, was riding his bicycle in a northerly direction allegedly in the northbound car track, following a street car moving in the same direction. A tractor and trailer of the defendant was being driven south on Cottage Grove Avenue by Fred Roempler, an employe of the defendant.

The contested issues in the main are (1) whether the District Court erred in denying defendant's motions for a directed verdict and for judgment notwithstanding such verdict, (2) whether the court erred in the giving and refusing of instructions, (3) whether the verdict of the jury was grossly excessive, and (4) whether the argument to the jury made by plaintiff's attorney was inflammatory and prejudicial to the defendant.

We shall first consider defendant's contention, urgently pressed upon us, that the court erred in refusing its motion for a directed verdict. We note in the beginning without extended discussion the contrariety of view advanced by the respective parties as to our function on review. Plaintiff, relying upon Illinois cases, contends that the question is whether there is any evidence fairly tending to prove the allegations of the complaint when considered in the light most favorable to plaintiff. On the other hand, defendant contends that the rule is different in the Federal court and that the question is whether there is substantial evidence to support the verdict. That this has often been held to be the rule is shown by many cases. Foster v. Denny Motor Transfer Co., 7 Cir., 100 F.2d 658, 659; Butte Copper & Zinc Co. et al. v. Amerman et al., 9 Cir., 157 F.2d 457, 458; Harnik v. Lilley, 8 Cir., 167 F.2d 159, 160; Baltimore & O. Ry. Co. v. Postum, D.C., 177 F.2d 53, 54. And see Gunning v. Cooley, 281 U.S. 90, 94, 50 S.Ct. 231, 74 L.Ed. 720. While the substantial evidence rule, so far as we are aware, has not been expressly repudiated

by the Supreme Court, yet the language employed in recent cases makes it of doubtful meaning. For instance, in Wilkerson v. McCarthy, 336 U.S. 53, 62, 69 S.Ct. 413, 418, 93 L.Ed. 497, the court stated: " * * * And peremptory instructions should not be given in negligence cases 'where the facts are in dispute, and the evidence in relation to them is that from which fairminded men may draw different inferences.' Washington & G. R. Co. v. McDade, 135 U.S. 554, 572, 10 S.Ct. 1044, 1049, 34 L.Ed. 235. Such has ever since been the established rule for trial and appellate courts. See Tiller v. Atlantic C. L. R. Co., 318 U.S. 54, 67, 68, 63 S.Ct., 444, 451, 452, 87 L.Ed. 610." See also Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32, 64 S.Ct. 409, 88 L.Ed. 520, and Tiller, Executor v. Atlantic Coast Line Ry. Co., 318 U.S. 54, 67, 63 S.Ct. 444, 87 L.Ed. 610. True, as defendant observes, these were cases under the Federal Employers Liability Act, but even so, the issue, as here, was whether there was sufficient proof of negligence to take the case to the jury. And it is evident that the Supreme Court in recent times has evidenced a strong inclination against directed verdicts in negligence cases.

■ We have a feeling that the varying phraseology used in stating the test to be employed by a reviewing court in passing upon the action of a trial court in allowing or denying a motion for a directed verdict is a play upon words, and that the apparent conflict is more fanciful than real. All parties agree that it is particularly the province of the jury to weigh the evidence and determine the credibility of witnesses. And we think it is sufficient on review if there is evidence which, if given credence by the jury, supports the charge of negligence.

The general position of the respective parties appears to be fairly stated in plaintiff's brief as follows:

"The plaintiff's theory as outlined in his opening statement was that while plaintiff was on his bicycle in the north bound street car tracks of Cottage Grove Avenue, just south of Oakwood Boulevard, the

defendant's tractor and trailer unit was moving south in Cottage Grove Avenue, with part of it over the center line, and struck plaintiff while he was in the east half of the street.

"The defendant's theory as found in its counsel's opening statement, is that plaintiff attempted to stop for a standing north bound street car at Oakwood Boulevard, and just as defendant's truck passed the rear of the street car, plaintiff turned his bicycle in to the unit at a point opposite where the driver sits in the truck."

It was on these respective theories that the case was tried, and it is substantially on the same theories that the case is argued here.

While the parties go into much detail in narrating the facts and circumstances in proof designed to support their respective positions, we think a comparatively brief statement will suffice. Cottage Grove Avenue just south of East Oakwood Boulevard, at the point where the accident occurred, is 40 feet in width, on which there are located two street car tracks, the easterly track for northbound traffic and the westerly track for southbound. The gauge of each track, which is the distance inside the rails, is 4'8½", and the distance from the inner edge of the inner southbound rail and the inner edge of the inner northbound rail is 5 feet. The central portion of the street is paved with brick to a width of 16½ feet, and included in this brick pavement are both of the street car tracks. The pavement on each side between the brick portion and the curb is composed of wooden blocks.

Defendant's tractor was 17'6" and the trailer attached to the tractor was 18 feet in length. The tractor had single wheels at its front end and dual wheels at its rear. There were also dual wheels on the rear of the trailer. The width of the tractor was 7'6", while that of the body of the trailer was 8 feet. The width of the dual wheels of the tractor was 7'1½", while that of the trailer was 7'3". The center line of Cottage Grove Avenue was 2'3½" east of the east edge of the east rail of the southbound car tracks. We are treat-

ed to a great display in figures and mathematics as to measurements and distances, the precise accuracy of which we regard as relatively unimportant. While there may be some discrepancy in the figures we have given of an inch or two here and there, we think they are substantially correct and sufficient for our purpose.

On the day in question, plaintiff had been on an errand and was on his way home, riding his bicycle north on Cottage Grove. As he approached Oakwood Boulevard there was a street car standing in front of him, and people were getting on and off. He testified that he stopped about 10 or 15 feet to its rear, between the two rails of the northbound car track. He remained stopped for three or four seconds, when the street car started to move. He stated that he was hit by a truck going south, that from the time he stopped until he was struck he remained between the northbound rails, that at the time the accident occurred the street car had gone, that he did not know what part of the truck hit him, that he did not drive his bicycle into the side of the truck, and that after he was struck he was lying in the middle of the northbound street car track. Plaintiff also stated that there were cars parked along the east curb.

On cross-examination, plaintiff testified that he did not see defendant's truck, that he was watching what was in front, that when he reached the street car it was still standing but that it soon started up rapidly and pulled away from him. He stated further that when he stopped his bicycle he put his right foot down in the middle of the northbound track. At another point, he stated that his right foot was on the east side of the east rail of the northbound track.

Wesley D. Locke, a witness for plaintiff, was a passenger on the street car and alighted when the car stopped at Cottage Grove and Oakwood. He testified that he saw a boy on a bicycle between the northbound car tracks, that he saw the accident and that the boy was struck by the left hand tire of the tractor, that this tire was one or two feet between the northbound

rails, and that the boy when struck was between the rails of the northbound track. Further, he testified that the boy after he was struck was between the rails in the northbound track and that the dual wheels of the tractor on the left hand side were in the northbound track to the extent of about a foot or a foot and one-half. He stated that he thought the street car had pulled away at the time of the accident. On cross-examination, he stated that it was either the left rear wheel of the tractor or the front wheel of the trailer which hit the boy. He stated that he could not say how fast the truck was moving but that it stopped within fifteen feet. He further testified that when the truck came in contact with the boy it was headed kind of southeast, that it did not continue going southeast but straightened up and went south, that when it stopped the left wheels were still about a foot east of the inner rail of the northbound track. He stated that the boy fell kind of southeast, with his bicycle lying in the street beside him, and that when he fell he was between the northbound rails.

Defendant's witness, Roempler, testified that on the day of the accident he was driving the tractor-trailer south in Cottage Grove Avenue, that as he approached Oakwood Boulevard he was traveling in the southbound street car track, that the right front wheel of the tractor was on the rail, that he stopped for the traffic light at Oakwood Boulevard, that he saw a street car approaching from the south about one-half block away, that after the light changed he proceeded across the boulevard and that by the time the front end of his tractor reached the south side of Oakwood, the street car was almost to the intersection. Further, he testified that he continued to move south in the southbound car track at a rate of speed of ten to fifteen miles an hour, that he noticed behind the street car a boy traveling on a bicycle and that the boy made a sudden turn to the left. The witness applied his brakes, there was an impact of the bicycle running into the tractor right behind the cab, and that he stopped his truck in about eight feet. He further stated that he did not at any time

turn to the left, that no part of the tractor or trailer was to the left of the center of the street. He further stated that after the accident part of the bicycle (the front wheel) was lying underneath the tractor frame, that the street car was a two-man car with a motorman in front and a conductor in the middle of the car, and that the street car did not move until four or five seconds after the impact. He further testified concerning certain measurements which he subsequently made of the tractor-trailer, and that if the unit were standing in the street car rails the body of the trailer would extend 20½" beyond the inside rail. On cross-examination, he testified that he was traveling with his right wheels along the west rail of the southbound car track, that the tractor wheels were east of the inside rail of the southbound car track when he was traveling in that position, that when the unit was being operated in that manner the trailer would be two feet or less east of the inside rail of the southbound track, and further, that he traveled about ten feet from the time he first saw plaintiff until the accident occurred, that there were vehicles parked all along on both sides of Cottage Grove Avenue and that he did not have time to give any horn signal.

The defendant produced two so-called disinterested witnesses, James T. Cronin and Sidney Powell, whose testimony we shall only briefly relate. In the main, they corroborated the testimony of Roempler. Cronin was driving his car north in the car tracks on Cottage Grove Avenue, and following the plaintiff. He stated that plaintiff swerved to the left and that the bicycle ran into the rear wheel of the tractor and that the tractor was traveling in the southbound track. On cross-examination Cronin stated that the plaintiff swerved to the left of the street car and collided with the truck, and that the boy was very close to the street car at the time of the collision. Also, he stated that the street car proceeded north after the accident. Powell testified that he was driving a truck north on Cottage Grove Avenue, following the automobile driven by Cronin, and that he was traveling in the northbound car track. He

stated that he saw the boy on the bicycle turn left from the street car track into the side of the southbound truck, and that it looked as if he ran into the truck between the cab and the rear wheel. On cross-examination, he stated that the street car stopped first and the boy riding on his bicycle cut out to his left, that the accident occurred just as the street car stopped, that the street car remained stopped a matter of seconds, and that the right wheels of the tractor when it stopped were in the east rail of the southbound car track.

Defendant argues, "We submit that the testimony of the plaintiff and his sole witness portrays an impossible state of facts; further, that this testimony is completely contrary to the physical facts and circumstances disclosed by the evidence," and "that plaintiff's testimony that he at all times remained within the confines of the north bound street car track and the testimony of his witness Locke that the left wheels of defendant's tractor-trailer unit were one and one-half feet or more in the north bound street car track, when admittedly its right wheels were on the outer rail of the south bound car track, presented not only an unrealistic but an impossible and unbelievable story * * *." And it is argued that the testimony of the plaintiff and the witness Locke "does not amount to substantial evidence because such testimony is controverted by the physical facts proved at the trial and common sense."

Defendant argues that it was impossible for the accident to have occurred as testified to by plaintiff upon two premises: first, that plaintiff was protected by the street car in front of him from being hit by any vehicle in the southbound lane, and second, that the right front wheel of defendant's tractor was moving on the west rail of the southbound track and the width of the tractor was such as to preclude its left side from extending across the center of Cottage Grove. The weakness of each of these positions resides in the fact that there is a dispute in the evidence as to the premise upon which they rest. If it were an admitted or undisputed fact that the street car was still stopped at the time of the accident, we might agree that it would

have been impossible for defendant's tractor-trailer to have swerved to the left a sufficient distance to have struck the plaintiff while the latter was in the northbound track. There is some testimony, however, that the street car had moved which, if believed by the jury, dispels this theory of impossibility. The other theory, predicated upon the position of the tractor-trailer and measurements, rests on the testimony of the truck driver that the right wheel of his tractor was moving on the west rail of the southbound track. But the jury was not bound to accept such testimony at its face value. It would be just as reasonable to argue the converse of the proposition, that is, that because plaintiff and his witness testified that the tractor turned to the left and its left wheels were in the northbound track at the time of the collision, that the right wheels of the tractor were not following the west rail of the southbound track, as testified to by defendant's driver.

Neither are we able to accept the reasoning based upon measurements as furnishing a solid ground for defendant's argument on impossibility. The center of the street admittedly was midway between the east rail of the southbound track and the west rail of the northbound track, which was 4'7" or 5', depending upon whether the distance was measured from the outside edge of the two rails or the inside. Thus, the distance between the outer edge (east edge) of the southbound track and the center of the street would be 2'3½". Taking into consideration defendant's testimony as to the width of its tractor at the widest point, even assuming that its right wheels were following the west rail of the southbound track, its tractor would extend to and perhaps a few inches beyond the center of the street. The significant thing about these measurements is that they show that only a slight turn to the left by defendant's driver would have placed the tractor to the left of the center of the street and no violent or abrupt turn was required to have placed it within the rails of the northbound track.

We think it fair to admit that on this record defendant's theory as to the

manner in which the accident occurred is more reasonable than that of plaintiff, but we cannot say that the evidence in support of plaintiff's theory is unbelievable, and certainly we cannot agree with defendant that it is so impossible as to make it unworthy of credence. Neither do we agree that it was not within the province of the jury, who saw and heard the witnesses and was charged with the responsibility of weighing their testimony, to find in favor of the plaintiff. In our view, and we so hold, there was no error in the trial court's refusal to direct a verdict in favor of the defendant.

While the criticism directed at the instructions is in some respects hypercritical, there are other respects in which it goes to the heart of the case. The court gave to the jury the following instruction:

"On the date in question, June 30, 1947, and prior thereto, there was in full force and effect a certain statute of the State of Illinois which, insofar as you are concerned with it, provides as follows:

" 'Drive On Right Side Of Roadway * * *.'

" 'Upon all roadways of sufficient width vehicle should be driven upon the right half of the roadway * * *.' " The statute referred to is Sec. 54, Article VII of the Uniform Act Regulating Traffic on Highways, subsequently referred to as the Act. Ill.Rev.Stats.1949, Vol. 2, Ch. 95½. At the same time the court refused, at the request of the defendant, to instruct in the language of Sec. 24 of Article II of the Act, as follows: " 'Every person riding a bicycle upon a roadway shall be subject to the provision of the Motor Vehicle Act applicable to the driver of the vehicle, except those provisions of the Act which by their nature can have no application.' "

This refusal to instruct as requested directly presents the question as to whether the rider of a bicycle is subject to the law of the road, that is, required to ride upon the right half of the roadway, and that question assumes great importance in the instant situation because the essential issue was which of the parties was travel-ing on the left or wrong side of the center of the street. As heretofore shown, that was the issue upon which the case was tried, presented to and decided by the jury. Plaintiff's counsel stated in his closing argument to the jury, "The issue in this case is who was on the right hand side of the street." As already shown, plaintiff's theory, supported by evidence, was that he was at the time of the collision riding his bicycle to the right of the center of the street, while defendant's theory, supported by evidence, was that its driver was driving the truck and trailer to the right of the center of the street.

Plaintiff's argument that the court properly refused defendant's proposal is based solely on the decision of this court in Johnson v. Railway Express Agency, Inc., 7 Cir., 131 F.2d 1009, 1011, and apparently the trial court also relied upon this decision as the reason for its refusal. Plaintiff's argument, which it is claimed the Johnson decision supports, is based upon Sec. 2(a), Article I of the Act, which defines a "vehicle" as follows: "Every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, except devices moved by human power * * *." Obviously, as was pointed out in the Johnson case, this statutory definition excludes a bicycle, it being a device "moved by human power". In the Johnson case we held that Sec. 107, Article XV, requiring lamps on "all vehicles" was not applicable to a bicycle, but in doing so stated, "We are of the view that the requirements of Section 24 are directed at the conduct of persons and not the things therein enumerated." In further emphasis of this point, Sec. 24 includes "Every person riding a bicycle", and makes such person "subject to the provision of this Act applicable to the driver of a vehicle, except those provisions of this Act which by their nature can have no application." Thus, Sec. 54, Article VII, which requires that a vehicle be driven on the right half of the roadway clearly appears to include a person riding a bicycle. Unless the rider of a bicycle is amenable to the law of the road under Sec. 24 the same as the driver of a vehicle, un-

der Sec. 54, it is hardly conceivable that any purpose is served by the former section. To hold otherwise is to read it out of the statute. And this view does not mean that a bicycle is a vehicle within the statutory definition because it is expressly excluded therefrom. What it does mean is that the statute requires a bicycle to be ridden on the right half of the road just as it requires a vehicle to be driven on that side.

Thus, the instant situation is clearly distinguishable from that before us in the Johnson case. In construing the Act, we are unaided by the decision of any Illinois court. Our endeavor has been to construe these various provisions so as to give each a place in the statutory scheme and so as not to render any provision meaningless. We think that purpose was served in the Johnson case, and that it is being reviewed in the instant case.

Other than our decision in the Johnson case, plaintiff makes no effort to defend the rejection of this proposed instruction other than to continue the argument that a bicycle is not a vehicle. As shown, we agree with that argument, but it is beside the point. The question is not whether a bicycle is a vehicle but whether the rider of a bicycle is bound to the same right-of-way law as the driver of a vehicle. We hold that he is.

From what we have said, it follows that the refusal to give the proposal under consideration was error. The difficult problem is whether its refusal was so prejudicial as to require a reversal. We think under the circumstances of the case that it was. With the result depending upon the issue as to which of the parties was traveling on the wrong side of the road and therefore responsible for the collision, it became of vital importance that the jury be instructed as to the corresponding rights and duties of each. Instead, the court instructed the jury in effect that the defendant had a statutory duty to travel on its side of the street but refused to instruct that the plaintiff had the same statutory duty. As was stated in Rasmussen v. Wiley, 312 Ill.App. 404, 409, 39 N.E.2d 57, 60: "The jury was presented with two diametrically opposite versions of the manner in which the collision occurred, and the defendant, in view of this conflict and the necessity for the jury to pass upon the weight and credibility of the conflicting evidence, was entitled to have the applicable principles of law correctly stated in the instructions."

Another portion of the court's charge which we think is susceptible of meritorious criticism is that which follows the instruction which we have lastly discussed, as follows:

"There was at the same time in full force and in effect a further statute of the State of Illinois which, insofar as you are concerned with it, provides as follows: "' * * * The driver of a motor vehicle shall when reasonably necessary to insure safe operation give audible warning with his horn but shall not otherwise use such horn when upon a highway.'"

The statute referred to is Sec. 115 of Article XV of the Act, entitled "Horns and warning devices." The section provides in substance that every motor vehicle shall be equipped with a horn, capable of being heard not less than two hundred feet, and provides, "but no horn or other warning device shall emit an unreasonably loud or harsh sound or a whistle." Following is the portion of the section which the court gave.

In the first place, we doubt if this instruction should have been given in any form. True, the failure to sound the horn was alleged in the complaint as an act of negligence but, as previously shown, the case was tried and argued on a single issue as to which of the parties was on the wrong side of the road. At no time in his argument to the jury did plaintiff's counsel mention or refer to defendant's failure to sound the horn. The only witness who mentioned such failure was defendant's driver, who stated that he had no opportunity to sound his horn. And even under plaintiff's theory and evidence it is not discernible how and when such a duty could have arisen. In fact, the sounding of a horn under the circumstances

would likely have done more harm than good.

Plaintiff cites Illinois cases where an instruction in the language of the statute has been approved, and defendant cites cases where such an instruction has been criticized and in some held to be reversible error. We shall not attempt to reconcile these conflicting views, but a study of the cases shows that it depends upon the nature of the provision and the circumstances of the case. A driver is required to sound a horn only "when reasonably necessary to insure safe operation," but not otherwise. Plaintiff in defense of this instruction states, "There was evidence which made it a question of fact as to whether or not it was 'reasonable and necessary' * * *." We doubt the validity of this assertion but, even so, the jury was not told that it must determine from the evidence whether it was "reasonably necessary" to insure safe operation that the horn be sounded. The point is that in the absence of such determination by the jury, the failure to sound a horn was not a violation of the provision. Moreover, even though the jury had made such determination, it was not given any explanation or criteria as to how such violation might effect the issue for decision. We are of the view that the giving of this instruction was error, although it might not, standing alone, be sufficient to require reversal. It does, however, strengthen our conclusion heretofore stated that the judgment should be reversed.

In the view we take of the case, it is unnecessary to consider further the criticism directed at the court's charge, and likewise we think we need not consider the contention that the verdict is excessive or that the argument to the jury by plaintiff's attorney was inflammatory and prejudicial.

The judgment appealed from is reversed and the cause remanded for a new trial.