## TENNANT, ADMINISTRATRIX, *v.* PEORIA & PEKIN UNION RAILWAY CO.

No. 94. Argued December 15, 1943.—Decided January 17, 1944.

*Mr. William H. Allen,* with whom *Mr. Mark D. Eagleton* was on the brief, for petitioner.

*Mr. Eugene E. Horton* for respondent.

---

MR. JUSTICE MURPHY delivered the opinion of the Court.

This action was instituted by petitioner, who is the administratrix of the estate and the widow of the deceased Harold C. Tennant, under the Federal Employers' Liability Act.[1] Recovery was sought for the alleged wrongful death of Tennant during the course of his employment as a member of a switching crew in one of respondent's railroad switching yards. The case was submitted to a jury, which returned a verdict in favor of petitioner and awarded her damages of $26,250. The District Court entered judgment accordingly. On appeal by respondent, the court below reversed this judgment after finding that, while there was evidence of negligence by respondent, there was no substantial proof that this negligence was the proximate cause of Tennant's death. 134 F. 2d 860. It held that the District Court should have directed a verdict in favor of respondent or allowed its motion for judgment notwithstanding the verdict. We granted certiorari because of important problems as to petitioner's right to a jury determination of the issue of causation.

Tennant was employed as a switchman in the "B" yard of respondent's switching yards in East Peoria, Illinois. He had worked there for several years and had been attached to the particular five-man switching crew for several months prior to the fatal accident. On the night of July 12, 1940, this crew was engaged in one of its nightly tasks of coupling freight cars and removing them from track B–28. The electric Diesel engine used by the crew was brought down from the north through divide switch B–28 and onto track B–28, which extended straight north and south. The front or pilot end of the engine was headed south. There were about twenty cars in various

---

[1] 35 Stat. 65, as amended; 36 Stat. 291; 53 Stat. 1404; 45 U. S. C. § 51.

groups on track B–28 at that time; they were to be coupled together and moved northward out of track B–28 to other locations.

In the course of these coupling operations, the engine stopped and started six or eight times, gradually moving southward. After all twenty cars had been coupled, the engine remained stationary for five or ten minutes before the engineer received the back-up signal from Harkless, the foreman. The engineer testified that the engine at this point was standing about five or six car lengths south of switch B–28, a car length approximating forty feet. There was other testimony, however, indicating that the engine was seven or eight car lengths south of the switch. While thus waiting for the back-up signal, the engineer saw Tennant on the west side of the engine placing his raincoat in a clothes compartment beneath the cab window. After putting on a cap and jacket he walked around the north or rear end of the engine and was never seen alive after that.

There was no direct evidence as to Tennant's precise location at the moment he was killed. There was some evidence to indicate that he never walked back on either side of the engine. It was his duty as a switchman or pin-puller to stay ahead of the engine as it moved back out of track B–28, protect it from other train movements, and attend to the switches.

The engine then pulled the twenty cars out of track B–28. The fact that Tennant was missing was first noticed when the engine reached a point some distance north of switch B–28. An investigation revealed blood marks on the west rail of track B–28 some 315 feet, or about seven or eight car lengths, south of switch B–28. There was a pool of blood a foot and a half north of those marks; near by, between the rails, were Tennant's right hand, his cap and his lighted lantern. His body was found at switch B–28, while his head was discovered

about fourteen car lengths north and west of that switch. An examination of the engine and cars disclosed only a tiny bit of flesh on the outside rim of the north wheel of the third car from the engine. There was no evidence of his having slipped or fallen from any part of the engine or cars.

The case was submitted to the jury on the allegation that Tennant's death resulted from respondent's negligence, in that its engineer backed the engine and cars northward out of track B–28 without first ringing the engine bell. The failure to ring the bell, which was not disputed, was alleged to be in violation of Rule 30 of respondent's rules for its employees. This rule provides that "The engine bell must be rung when an engine is about to move and while approaching and passing public crossings at grades, and to prevent accidents." There was conflicting evidence as to whether this rule was for the benefit of crew members who presumably were aware of switching operations and as to whether it was a customary practice for the bell to be rung under such circumstances. In addition, respondent placed great reliance on the provision of Rule 32 that "The unnecessary use of either the whistle or the bell is prohibited." This was said to demonstrate that the bell should not have been rung on this occasion.

In order to recover under the Federal Employers' Liability Act, it was incumbent upon petitioner to prove that respondent was negligent and that such negligence was the proximate cause in whole or in part of the fatal accident. *Tiller* v. *Atlantic Coast Line R. Co.*, 318 U. S. 54, 67. Petitioner was required to present probative facts from which the negligence and the causal relation could reasonably be inferred. "The essential requirement is that mere speculation be not allowed to do duty for probative facts, after making due allowance for all reasonably

possible inferences favoring the party whose case is attacked." *Galloway* v. *United States,* 319 U. S. 372, 395; *Atchison, T. & S. F. Ry. Co.* v. *Toops,* 281 U. S. 351. If that requirement is met, as we believe it was in this case, the issues may properly be presented to the jury. No court is then justified in substituting its conclusions for those of the twelve jurors.

As to the proof of negligence, the court below correctly held that it was sufficient to present a jury question. In view of respondent's own rule that a bell must be rung "when an engine is about to move," it was not unreasonable for the jury to conclude that the failure to ring the bell under these circumstances constituted negligence. This was not an operation where bell ringing might be termed unnecessary or indiscriminate as a matter of law. Cf. *Aerkfetz* v. *Humphreys,* 145 U. S. 418, 420; *Toledo, St. L. & W. R. Co.* v. *Allen,* 276 U. S. 165, 171. The engine had remained stationary for several minutes, during which the engineer saw Tennant disappear in the direction of the subsequent engine movement. Still not knowing the precise whereabouts of Tennant, the engineer then caused the engine and cars to make an extended backward movement. Such a movement, without a warning, was clearly dangerous to life and limb. *New York Central R. Co.* v. *Marcone,* 281 U. S. 345, 349. There was ample though conflicting evidence that respondent's written rule, as well as the practice and custom, required the ringing of the engine bell in just such a situation. We cannot say, therefore, that the jury's concurrence in that view was unjustified.

The court below erred, however, in holding that there was not sufficient proof to support the charge that respondent's negligence in failing to ring the bell was the proximate cause of Tennant's death. The absence of eye witnesses was not decisive. There was testimony that

his duties included staying near the north or rear end of the engine as it made its backward movement out of track B–28. The location of his severed hand, cap, lantern and the pool of blood was strong evidence that he was killed approximately at the point where the engine began this backward movement and where he might have been located in the performance of his duties. To this evidence must be added the presumption that the deceased was actually engaged in the performance of those duties and exercised due care for his own safety at the time of his death. *Looney* v. *Metropolitan R. Co.*, 200 U. S. 480, 488; *Atchison, T. & S. F. Ry. Co.* v. *Toops, supra,* 356; *New Aetna Portland Cement Co.* v. *Hatt,* 231 F. 611, 617. In addition, the evidence relating to the rule and custom of ringing a bell "when an engine is about to move" warranted a finding that Tennant was entitled to rely on such a warning under these circumstances. The ultimate inference that Tennant would not have been killed but for the failure to warn him is therefore supportable. The ringing of the bell might well have saved his life. The jury could thus find that respondent was liable "for . . . death resulting in whole or in part from the negligence of any of the . . . employees." [2]

In holding that there was no evidence upon which to base the jury's inference as to causation, the court below emphasized other inferences which are suggested by the conflicting evidence. Thus it was said to be unreasonable to assume that Tennant was standing on the track north of the engine in the performance of his duties. It seemed more probable to the court that he seated himself on the footboard of the engine and fell asleep. Or he may have walked back unnoticed to a point south of the engine and been killed while trying to climb through the cars to the other side of the track. These and other possibilities sug-

---

[2] See note 1, *supra.*

gested by diligent counsel for respondent all suffer from the same lack of direct proof as characterizes the one adopted by the jury. But to the extent that they involve a disobedience of duty by Tennant no presumption in their favor exists. Nor can any possible assumption of risk or contributory negligence on Tennant's part be presumed in order to negate an inference that death was due to respondent's negligence.

It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences. The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. The very essence of its function is to select from among conflicting inferences and conclusions that which it considers most reasonable. *Washington & Georgetown R. Co.* v. *McDade,* 135 U. S. 554, 571, 572; *Tiller* v. *Atlantic Coast Line R. Co., supra,* 68; *Bailey* v. *Central Vermont Ry.,* 319 U. S. 350, 353, 354. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.

Upon an examination of the record we cannot say that the inference drawn by this jury that respondent's negligence caused the fatal accident is without support in the evidence. Thus to enter a judgment for respondent notwithstanding the verdict is to deprive petitioner of the right to a jury trial. No reason is apparent why we should abdicate our duty to protect and guard that right in this

case. We accordingly reverse the judgment of the court below and remand the case to it for further proceedings not inconsistent with this opinion.

*Reversed.*

MR. JUSTICE FRANKFURTER and MR. JUSTICE JACKSON concur in the result.

MR. CHIEF JUSTICE STONE and MR. JUSTICE ROBERTS are of opinion that the judgment should be affirmed.