## MARTIN v. FEDERAL CARTRIDGE CORPORATION.

## SMITH v. SAME.

### Nos. 1671, 1674.

District Court, D. Minnesota,
Fourth Division.

May 3, 1946.

Marshall S. Snyder, of Minneapolis, Minn., for plaintiffs.

Henry F. Simons, of Minneapolis, Minn., for defendant.

DONOVAN, District Judge.

These cases were commenced to recover "unpaid wages and overtime compensation and an additional equal amount of damages, pursuant to Section 16(b) of the Fair Labor Standards Act of 1938," 29 U.S.C.A. § 216 (b), 52 Stat. 1069.

The cases were consolidated and tried to a jury. The jury returned a verdict for defendant in each case. Plaintiffs moved for a new trial "on the following grounds: 1. That the verdict is against the clear weight of evidence. 2. Will result in a miscarriage of justice".

The trial consumed five days and 26 witnesses testified. The evidence disclosed that plaintiff Martin, a machinist of 41 years' experience, commenced work with defendant as a general foreman on November 8, 1941, and continued in that employment until August 18, 1945. Defendant arranged that plaintiff spend his first six weeks attending a school of instruction in Philadelphia for the purpose of learning the rudiments of defendant's anticipated business, i.e., the methods of manufacturing cartridges, ammunition and its kindred products. Plaintiff Martin said it was defendant's plan that he be used as an instructor in connection with the setting up of new machinery defendant contemplated installing at its plant in Minneapolis. Ultimately, with commencement of operations at the plant, Martin became general foreman of the primer division and in charge of three shifts of eight hours each.

The testimony of Martin and his corroborating witnesses makes clear that he was a well-trained and highly skilled machinist. He was a man of unusual inventive genius, a man of sound judgment in all matters he

undertook. His work was beyond criticism and its high quality was acknowledged by defendant, who praised his industry and ability without stint. From the beginning of operations plaintiff Martin found many things deficient, which he improved by his own plans carried into execution. For instance, he devised and produced special springs, improved "latch fingers", improved "eccentric pins", produced a "straightening bar", designed and produced a "varnish brush", "made a hand machine to remove the primer", "made an eccentric bushing", "made a stripper plate", designed "a rod, spring and bracket", made "a varnish rod, spring and sleeve", made "a plate for all machines", designed a "vent detector check to stop machines", made "fiber guide bars", made "a primer slip clutch", improved "the foreign matter detector", and made many other improvements during his employment as a general foreman by defendant. He testified he spent an average of 90 minutes per day installing improvements, 30 minutes per day doing the work of adjuster and inspector, 40 minutes per day adjusting machines, 30 minutes per day starting machines, 30 minutes per day doing relief work, 40 minutes per day correcting tools and parts, and 60 minutes per day on adjustment work. All of this he said was menial work and totaled an average of 5 hours and 20 minutes overtime each day he was employed.

Martin had foremen and employees working under him. He was what was termed the "top man" in the division. He commenced work November 8, 1941, at $200 per month and this remuneration was increased until he was paid $350 per month. Exhibit 1 indicates plaintiff Martin had no complaint to make against defendant. This exhibit was a paper termed "a separation statement", which plaintiff Martin admitted he signed, but said he did not read, and which in effect stated he had been treated well and had no grievance against defendant.

Plaintiff Smith had worked for defendant 13½ years at Anoka, Minnesota, before transferring to its New Brighton plant to commence work under plaintiff Martin, on February 27, 1942. He started work on the last-named date as an "adjuster", working in Martin's department. He progressed until he was made a "shift foreman", which last employment he continued in during all the time we are here concerned with.

Smith testified that as shift foreman he was paid $58.40 per week until September 13, 1942, when his weekly wage was increased to $69.60. This rate continued until June, 1945. This salary was paid to him to supervise the work of employees who worked in his department, that of some 52 subordinates. The overtime compensation Smith claims in this proceeding was for menial work performed by him, in addition to his work as shift foreman, and which he described as helping "on the floor". To illustrate, Smith testified that he helped with the primers, did the adjusting on machines, helped in "jams", helped in cleaning up, helped in the daily assorting of scrap, helped handle trucks, hauled salvage by truck, helped and relieved the "move man", assisted "relief girls" and helped in feeding machines, relieved "the visual girls", relieved "the primer girls", repaired machines and performed similar menial tasks which Smith testified consumed three to six hours per day.

Plaintiff Smith signed Exhibit 2, which was termed a "separation statement", wherein he admitted he had no grievance against defendant at the termination of his employment.

Counsel for the respective parties cooperated fully in the matter of producing evidence, and, in a commendable manner, tendered it all to the jury. Nothing in the way of informative evidence was overlooked, and the case was thoroughly tried and presented.

As the trial progressed, it became obvious that the issues were narrowed to one question, i. e.: Did plaintiffs regularly spend more than twenty per cent of the regular 48-hour workweek performing work of the same nature as that performed by the non-exempt hourly employees, and work which was not directly related to or an incident of their supervisory duties, while employed as foremen from March 29, 1942, to the termination of employment? This question was submitted in the form of a special verdict in the case of each of the plaintiffs,

554

Martin and Smith. In each case the jury answered, "No." This was additional to a verdict for defendant in each case.

The Court gratefully acknowledges the assistance able counsel for plaintiffs and defendant rendered in preparation of the charge to the jury. Every phase of the law was discussed by Court and counsel in chambers, and most, if not all, of the charge was concurred in by counsel before arguments to the jury.

There is just one question here for decision, and that is: Are the verdicts of the jury justified by the evidence? The Court is of the opinion that the verdict in each case is justified by the evidence.

. The Court is confronted with a question that, time and again, has been before the courts, and in the great majority of the cases the motion as here made for a new trial was resolved in favor of the verdict.

 As emphasized in the authority most relied upon by plaintiffs in the case at bar, on a motion such as we have before us the evidence must be taken. in the light most favorable to the party (here the defendant) who prevailed before the jury. The only question before the Court is the sufficiency of the evidence. Ætna Casualty & Surety Co. v. Yeatts, 4 Cir., 122 F.2d 350.

The instant case is one in which the Court cannot say that the verdicts, or either of them, were contrary to the clear weight of the evidence. Nor can the Court say, in the face of the evidence, that the verdicts, or either of them, even approached what might be termed a miscarriage of justice. The record is such that the Court cannot say the verdicts are without evidentiary support within the rule controlling here. The evidence was such as to present jury issues in each case before the Court.

The Supreme Court of the United States has indicated its displeasure with the setting aside of jury verdicts in words as follows:

"The focal point of judicial review is the reasonableness of the particular inference or conclusion drawn by the jury. It is the jury, not the court, which is the fact-finding body.

\* \* \* \* \* \*

"Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."

See Tennant v. Peoria & Pekin Union Railway Co., 321 U.S. 29, 36, 64 S.Ct. 409, 412, 88 L.Ed. 520.

The issues in the two cases at bar presented questions for the jury. If two inferences can be drawn from the evidence the verdict should stand. In the opinion of the Court the evidence was sufficient to submit the cases to the jury, and to justify the verdicts returned.

Plaintiff's motion for a new trial in each case must, in each case, be denied. Defendant may submit appropriate orders.

An exception is allowed plaintiffs.