32329. BROWN *v.* ATLANTIC COAST LINE RAILROAD COMPANY.

DECIDED MARCH 18, 1949. REHEARING DENIED MARCH 31, 1949.

*Andrews & Nall, Walter G. Cooper,* for plaintiff.

*Alston, Foster, Sibley & Miller, Phillip H. Alston Jr., William B. Spann Jr.,* for defendant.

GARDNER, J. F. J. Brown brought suit against Atlantic Coast Railroad Company, an interstate carrier of passengers and freight, in Fulton Superior Court, in which suit plaintiff sought to recover damages under the Federal Employers' Liability Act (45 U. S. C. A. § 51 et seq.), by reason of the alleged negligence of the defendant railroad. The plaintiff alleges: that he was at the time of his injury a trainman of the defendant, and had been engaged in such employment some five months prior to his injury; that he was not an experienced railroad trainman; that his left leg was injured when "pinched" in the gangway between the defendant's engine and the tender of said engine when several cars rounded a sharp curve on the defendant's spur track in Polk County, Florida; that the engine had just picked up these cars at the terminus of the spur line where there was a sandpit; that the train was approaching a citrus packing house where several cars of fruit were to be picked up from a side track at the packing house and taken by this engine and cars to the main line of the defendant's railroad from Lakeland, Florida, to Frostproof, Florida, where the train on the main line was; that the plaintiff

was not familiar with this spur track, although he had been over the same on one or two prior occasions; that he did not recall the sharpness of this curve; that several of the defendant's trainmen had received injuries from having their legs pinched when standing between the engine and tender in the gangway as the train would round a sharp curve; that, while there was a box in the cab of the engine for the trainmen to sit, the same was not ordinarily used by the defendant's trainmen when the engine was switching, as on the occasion in question; that the plaintiff did not use the same, as he had to couple the fruit cars on the packing-house siding in a few minutes; that he was not told by the defendant's conductor and engineer or other employee of the defendant that it was dangerous for him to be standing on the inside of his gangway as the engine rounded this curve, nor had he ever been told of the danger of standing in the gangway on the inside of the curve at any time the engine rounded a sharp curve, that the cab and tender tended to come together on that side; that on an ordinary curve one standing in the gangway would not be pinched as he was; that, when the conductor saw his predicament he extricated his leg; that the defendant's track and roadbed on this spur line was in bad condition, and not well kept up; and that as a result of such injury to his leg the same had to be subsequently amputated. There was no demurrer to the petition as amended.

The plaintiff's evidence tended to substantiate the allegations of his amended petition. He contended that the defendant is liable for his injury because he was not warned of the danger of standing in the gangway of the engine at this place and time, and under the conditions then existing; that the defendant was negligent in not warning or informing the plaintiff that it was dangerous to stand in the gangway between the engine and cab of a locomotive as the same rounded a sharp curve, and in not warning him that the train was entering into a sharp curve, and that the gangway would close up on the side on which the plaintiff was standing as the train rounded this curve, in order that he might remove himself to a place of safety and not be caught as he was between the cab and tender of this engine, and also negligent in failing to furnish the plaintiff with a safe place to work. The

plaintiff also contends that the defendant was negligent in not giving the plaintiff a new and inexperienced employee, warnings and instructions in regard to the danger incident to standing in the gangway of an engine between the cab and tender whenever the engine rounded a sharp curve, and that such gangway would close up and might do so, so as to catch his leg between the cab and engine on the side of the gangway on the inside of the sharp curve.

At the conclusion of the plaintiff's evidence, the court sustained the motion of the defendant for a nonsuit and dismissed the case. The exception is to this judgment.

Did the defendant railroad, under the pleadings and evidence, owe the plaintiff, an inexperienced and green trainman, the duty to warn him as to the danger in standing on the inside of the curve of the gangway between the engine and cab as the train rounded this particular sharp curve, or owe him the duty of warning him of the danger of standing in such place at any time that an engine rounded a sharp curve?

When a court passes on a motion for a nonsuit it decides only the question, do the allegations and proof correspond? and not whether the plaintiff is entitled to recover on the facts alleged. "The right to recover under the facts alleged is not involved in the decision of such a motion. If the plaintiff proves his case as laid, he is entitled to prevail as against a nonsuit." *Kelly* v. *Strouse*, 116 *Ga.* 872 (43 S. E. 280). In *Clark* v. *Bandy,* 196 *Ga.* 546 (27 S. E. 2d, 17), the Supreme Court, in a case written by the late Justice Warren A. Grice, stated: "Since a failure to set out the plaintiff's cause of action with sufficient clearness is no ground of nonsuit . . and defective pleadings afford no reason for the grant of a nonsuit . . and since the office of of such a motion is not to test the legal sufficiency of a petition . . or to invoke a ruling as to whether the petition states a cause of action, but only brings up the question whether the plaintiff proved his case as laid, without establishing such additional facts as disproved his right to recover . . ; and since further, a nonsuit will be refused if there be even slight evidence to support the plaintiff's case . . we need not make inquiry as to whether or not the plaintiff's petition was defective, nor are

we here concerned with any question of substantive law with respect to the subject-matter of the suit. Our duty is merely to examine the allegations of the petition and the proofs offered by plaintiff, and to compare the same in order to determine whether, on application of the principles hereinbefore referred to, the nonsuit should have been granted." In the headnote, the court said: "Regardless of whether a petition sets out a cause of action, if the plaintiff proves every fact charged, without, at the same time, disproving his right to recover by establishing the existence of other undisputed facts which show that he is not entitled to a verdict, it is not proper to award a nonsuit." In *Henry* v. *Roberts*, 140 *Ga.* 477 (79 S. E. 115), the court said: "In passing on a motion for nonsuit upon the conclusion of the evidence submitted in behalf of the plaintiff, such evidence should be construed most favorably to him, and if, so construed, a prima facie case for the plaintiff is made out, a nonsuit should be refused." See also *Henry* v. *Nashville, Chattanooga &c. R. Co.,* 50 *Ga. App.* 49 (176 S. E. 906). In *Brown* v. *Savannah Electric Co.,* 46 *Ga. App.* 393, 395 (167 S. E. 773), the Court of Appeals said: "It is not proper to grant a nonsuit merely because the court would not allow a verdict for the plaintiff to stand. . . Even if the judge were justified in a given case, by an overwhelming preponderance of evidence for the defendant, in thinking that the jury should not find for the plaintiff, but rather should find for the defendant, this would give him no right, without the aid of the jury, to decapitate the plaintiff's case with a nonsuit." A nonsuit is not proper in a doubtful case. *Id.* Questions as to negligence, proximate cause, etc., are for the jury, and a nonsuit is error. *Id.; Smith* v. *Kleinberg,* 49 *Ga. App.* 194 (174 S. E. 731).

Was the defendant under any duty to warn the plaintiff? We think that the jury would have been authorized to find, under the facts, that the plaintiff was not an experienced trainman, as that goes, in the way of time of service, and that he was not entirely familiar with the condition of this spur line and curves therein. To one who had been along this spur line many times, the fact that the plaintiff was standing in a place of danger should have been obvious. The conductor and engineer were discussing the next train operation, the next time the plaintiff would have to

perform the duties of his employment, towit, picking up the cars at the packing-house siding, which was just a short distance away, and the plaintiff was standing immediately behind the conductor, his superior—and the master as to the plaintiff—in order to better understand what the plaintiff was to do and how it was to be done, so that he could more easily perform his duties for the defendant's benefit. The plaintiff's position was such that, when the locomotive rounded this curve, his leg was likely to be pinched between the cab and tender of the engine, as the curve was a sharp one, and the condition of the roadbed was bad, and the jury was authorized to find that the conductor and engineer knew, and did not inform the plaintiff of such condition. This court does not feel justified in holding that the plaintiff was injured as a result solely of his own failure to exercise ordinary care.

The jury was authorized to infer from the evidence that the plaintiff's immediate superiors, the conductor and the engineer, should have informed the plaintiff of the danger of standing in this gangway at the time and as the said engine rounded this curve, because the jury was authorized to find that the employees of the defendant, whe were in charge of this train and under whom the plaintiff was working, knew this spur line and this curve and the condition of the roadbed, and knew that there was danger for a person to stand in this gangway on the inside of the curve, as the engine rounded the same. This being so, the facts would have justified a jury in inferring that the defendant failed in its duty towards the plaintiff in not informing him of his danger. The plaintiff was in plain view and the defendant's employees in charge of the train knew that this gangway would close up on that side as the train rounded the curve. The plaintiff's contention—that the defendant was negligent in "not warning him of the danger of standing in the gangway at the time and place stated and under the conditions then existing as alleged," and in "not warning him that the engine was going around a curve and that the gangway would close up when it did and that it was dangerous for him to stand where he was, so that he might move away and not be caught" as he was, and in "not giving him, a new employee, warnings and instructions in regard to the dan-

ger that when the engine rounds a curve, a gangway will close up to such an extent that a man standing in the gangway may be pinched between the cab and tender"—was supported by the evidence, and from that we can not hold, as a matter of law, that the jury were not authorized to infer that the defendant was negligent in that the plaintiff should have been warned and informed of the danger. Others had been hurt in this manner. The jury could infer that the defendant knew of this. Under the facts appearing from the pleadings and the evidence, this court can not hold as a matter of law that the injury to the plaintiff's leg did not result from or was not caused by the failure of the defendant to warn the plaintiff or to inform him of the danger of standing where he was in this gangway at the time and place and under the conditions existing.

It is to be remembered that "a nonsuit will be refused if there be even slight evidence to support the plaintiff's case." *Clark* v. *Bandy,* supra. Also, that "to deprive these workers of the benefit of a jury trial in close or doubtful cases is to take away a goodly portion of the relief which Congress has afforded them" in the enactment of the Federal Employers' Liability Act (45 U. S. C. A. § 51, et seq.), under which this suit was brought. See Bailey *v.* Central Vermont Railway, 319 U. S. 350 (63 Sup. Ct. 1062, 87 L. ed. 1444). See also Tiller *v.* Atlantic Coast Line R. Co., 318 U. S. 54 (63 Sup. Ct. 444, 87 L. ed. 610, 143 A. L. R. 967); Cogswell *v.* Chicago & E. I. R. Co., 328 U. S. 820 (66 Sup. Ct. 1122, 90 L. ed. 1601); Tennant *v.* Peoria &c. Ry. Co., 321 U. S. 29 (64 Sup. Ct. 409, 88 L. ed. 520); Lavender *v.* Kurn, 327 U. S. 645 (66 Sup. Ct. 740, 90 L. ed. 916). It must be remembered that under the act governing this suit, contributory negligence "shall not bar recovery." The liability for negligence under the Georgia law is not the same as liability for negligence under the act of Congress under which this suit is brought. Under the Georgia law, before a plaintiff will be entitled to recover, the negligence of the defendant must be shown to be greater than that of the plaintiff. Under the Employers' Liability Act, the diminution of damages is proportionate to the amount of negligence attributable to the employee. For instance, under the Federal Employers' Liability Act, if the injury is caused by 25 percent negligence of the defendant,

and 75 percent negligence of the plaintiff, the plaintiff would be entitled to recover 25 percent for the injuries.

It becomes unnecessary to pass upon any other questions raised. The pleadings and evidence make a case for submission to a jury.

Applying the foregoing principles and under the facts appearing, the trial court erred in granting the motion of the defendant for a nonsuit.

*Judgment reversed. MacIntyre, P. J., and Townsend, J., concur.*