Sam McHONEY, Herbert Dunmeyer, John Smith, Franklin White, Robert Jenkins, Chapel Mouzon, Limon Joyner, Felix McKnight, Luther Moore, Thomas Burch and John Bowens, Plaintiffs,

v.

MARINE NAVIGATION COMPANY, Inc., (substituted for Marine Transport Lines, Inc.), Defendant.

Civ. A. No. 4080.

United States District Court
E. D. South Carolina,
Charleston Division.

Sept. 3, 1955.

I. H. Jacobson, Charleston, S. C., Robert Klonsky, of Klonsky & Steinman, New York City, for plaintiffs.

Kirlin, Campbell & Keating, New York City, Charles W. Waring, of Waring & Brockinton, Charleston, S. C., for defendant.

WILLIAMS, District Judge.

This matter now comes before me on a motion of the Plaintiffs for judgment notwithstanding the verdict of the jury, or, in the alternative, for a new trial. Counsel for the plaintiffs and the defendant have vigorously and ably, in oral and written argument, presented their contentions and I have fully considered all phases of the matters presented.

The complaint alleged that the eleven plaintiffs were longshoremen employed aboard the S. S. Marine Merchant to unload a sulphur cargo at the Port of Charleston, and that on February 5, 1952, while so employed, they received personal injury as the result of a fire in the No. 2 hold. It was further alleged that the defendant was, at the time of the fire, the owner and operator of the vessel and that it was due to the failure of the defendant to maintain the vessel and its appurtenances in a seaworthy condition or to the negligence and carelessness of the defendant in not maintaining a safe place for the plaintiffs to work and in not furnishing adequate protection from injury, that their injuries were brought about.

By reason of these alleged delicts on the part of the defendant having allegedly resulted in serious injuries to the plaintiffs, the plaintiffs demanded recovery of large sums as damages.

The defendant admitted its ownership of the vessel and its operation and control of those parts not surrendered to the stevedore, James Doran & Company, for unloading, but denied the material allegations of the complaint. The defendant made several affirmative pleas which need not be considered here.

The plaintiffs having demanded a jury trial, I arranged that a special term should be held, beginning November 22, 1954, for the trial of this case. However, it appeared to me that the trial of the issues would be greatly simplified if the matter initially to be heard was confined to the determination of whether there was any liability upon the defendant. With this procedure, if the sulphur fire was found to have been brought about by the defendant's breach of its warranty of seaworthiness or by the defendant's negligence, a second hearing would be required to determine the extent of the plaintiffs' injuries and to fix the amount of recovery, but if it was found that no liability existed, no further proceedings would be necessary. In either event, a very long and complicated trial would thus be avoided and after I consulted with counsel, it was agreed by all concerned that the first hearing should be confined to the liability issues alone. Before my charge was given, it was agreed by counsel for all parties that the following questions should be presented for determination by the jury:

First: Was the sulphur fire aboard the S. S. Marine Merchant on February 5, 1952, caused by the defendant's breach of its warranty of seaworthiness?

Second: Was the sulphur fire aboard the S. S Marine Merchant on February 5, 1952, caused by the defendant's negligence?

Third: If you have answered either or both of the above as "yes", state whether or not the plaintiffs did con-

tribute to their own injuries. If "yes", in what percentage?

On November 22nd the trial was commenced and the testimony of the plaintiffs was completed on November 24th. A recess was then taken until November 29th, when the defendant presented its testimony, and on December 1st the presentation of all testimony and evidence was completed. On December 2nd counsel addressed the jury, I delivered my charge to the jury and the jury retired to consider its verdict. On the afternoon of December 2nd the jury announced that its verdict was "No" in answer to both the first and second questions put to it for determination, no answer being given to the third question since it was unnecessary to do so. On December 8th, I ordered that, by reason of the verdict, the plaintiffs should recover nothing of the defendant and the Clerk was directed to enter judgment for the defendant against the plaintiffs. Thereafter, the plaintiffs served notice of motion for judgment n. o. v. or, in the alternative, for a new trial.

From the testimony produced at the trial, some undisputed facts emerge. The eleven plaintiffs were employed as longshoremen by James Doran & Company, who were performing stevedoring services in connection with the unloading of a sulphur cargo from the S. S. Marine Merchant at the Columbus Street docks of the South Carolina State Ports Authority at the Port of Charleston. The stevedoring company was an independent contractor hired by the cargo owner to perform the unloading services and, in the performance of this operation, the employees of the stevedoring company handled the ship's winches and the other paraphernalia used in the unloading process. The unloading of the cargo was under the supervision and control of the stevedoring company and no officer of the ship or representative of the defendant took part in the direction of the unloading work. In the late afternoon of February 5, 1952, the eleven plaintiffs were working in the No. 2 hold of the vessel, their function being to shovel sulphur into the large metal buckets supplied by their employer which were lowered into the hold from the ship's booms by the ship's winches. When a bucket was filled with sulphur by the plaintiffs, it would then be hauled above the deck of the ship, swung over the side and the contents dumped into a railroad car located on the dock. While this operation was in progress something brought about the igniting of the sulphur dust in suspension in the No. 2 hold, resulting in a flash fire in the lower hold. The fire caused smoke and fumes in the hold but the eleven plaintiffs successfully found their way or were assisted out of the hold to the deck of the vessel. Water was put upon the fire and the Charleston Fire Department summoned. The fire preventative measures soon completely quelled the fire without damage to the vessel or its cargo.

The plaintiffs attempted to show that the ship's winches were not operating properly and that, as a result, the metal bucket was caused to strike the coaming of the hatch and thus cause the spark which ignited the sulphur dust. The testimony in regard to the allegedly faulty operation of the winch was given by two of the winchmen employed by the stevedoring company, but the defendant attacked the credibility of these witnesses by putting in evidence their affidavits taken prior to the trial, in which they had stated that the winches were working perfectly at the time of the fire. The defendant also produced several witnesses who testified that the winches were in perfect order and, when used before and after the fire, were found to have nothing whatever wrong with them. The plaintiffs further attempted to show that the defendant failed to furnish a safe place for the plaintiffs to perform their work and failed to give adequate protection against the incidence of a sulphur fire. A witness for the plaintiffs testified that the conditions were unsafe, in that there were insufficient exit ladders, in that there was no hose immediately available with water pressure sufficient to put out the fire, in that the hold

had been painted with a substance containing fish oil, in that no adequate fire watch was maintained, and in certain other respects. The defendant, on the other hand, produced a number of witnesses who testified that the No. 2 hold had adequate means of exit available for the plaintiffs' use; that there were hoses immediately available at the No. 2 hatch with sufficient water pressure to put out the fire; that the painting of the hold would not cause an inflammable condition; that members of the ship's crew were near the hold when the fire broke out and within a matter of moments manned the hoses and put water upon the fire; and that the condition in the hold was reasonably safe in all respects for the plaintiffs to perform their work. All of this testimony, pro and con, furnished clear issues of fact to be determined by the jury.

One of the principal contentions of the plaintiffs upon this motion is that the defendant was guilty of negligence per se in that it failed to comply with two of the United States Coast Guard's regulations. One of the regulations alleged to have been violated was said to require that a fire hose supplied with fresh water from a shore supply source should be available at each hatch where sulphur is being unloaded. The plaintiffs lay great stress upon an admission by the Master of the vessel to the effect that there was no water connection on the vessel to a shore supply source. However, there was testimony given by two of the employees of the stevedoring company that a hose with fresh water from a shore supply source was lying upon the dock near the No. 2 hatch and that this hose was promptly brought into action after the fire began. The other regulation claimed to have been violated requires that "an oxygen breathing apparatus or proper gas mask shall be made readily available". The testimony was that oxygen breathing apparatus and gas masks were kept in a room on the bridge deck and Commander Thompson, the Coast Guard Officer charged with the duty of inspecting the vessel to insure compliance with safety requirements, stated on the stand

that this was a compliance with the applicable regulation and that all safety requirements had been officially approved by him on the occasion of his last inspection a short time before the fire.

■ The defendant objected to the introduction of any evidence tending to show a violation of the Coast Guard regulation pertaining to the availability of a fire hose supplied with fresh water from a shore supply source, upon the ground that this regulation did not apply to the process of unloading sulphur. This particular paragraph of the regulations applicable in respect to the loading and unloading of bulk sulphur reads that a "fire hose supplied with fresh water from a shore supply source shall be available at each hatch through which the *sulfur is being loaded*." However, in the light of an executive ruling made by the Commandant of the United States Coast Guard on November 24, 1954, I ruled during the course of the trial that this particular regulation applied when sulphur was being unloaded. It was therefore a question for the jury to decide whether in the light of the law as expressed by me on the applicability of this regulation, there was, in fact, a failure to comply with the requirement and whether this failure proximately caused the occurrences from which the plaintiffs' injuries proximately resulted.

■ Under our system of jurisprudence, when a jury is empaneled for the trial of a case, it assumes the duty of determining the factual issues and the Trial Judge may not usurp this function after the verdict has been rendered even though he might have arrived at a different conclusion. My present obligation is to consider the evidence adduced at the trial in the light most favorable to the defendant and to decide whether the jury, so viewing the evidence, could reasonably have arrived at the verdict which it did. If there is conflicting evidence upon the issues for determination and if the jury could reasonably have resolved the conflict as it did, there would be no justification for me to set aside the verdict. Tennant v. Peoria & P. U. Ry. Co., 321

U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520; Hays v. Stine, 4 Cir., 289 F. 224; Garrison v. United Staes, 4 Cir., 62 F.2d 41; Mt. Adams & E. P. Inclined Ry. Co. v. Lowery, 6 Cir., 74 F. 463.

It is not necessary that I decide whether the evidence preponderated in favor of the conclusion that there was no breach of any warranty of seaworthiness in respect to the vessel and that the defendant was not guilty of any negligence which might have caused the sulphur fire aboard the vessel or by which injury might have resulted to the plaintiffs. I am of the opinion that there was at least conflicting evidence upon all of the factual elements which could have tended to establish either that there was a breach of the warranty of seaworthiness or that there was negligence on the part of the defendant which caused the sulphur fire aboard the S. S. Marine Merchant on February 5, 1952, or which brought about injury to the plaintiffs as a result thereof. Since I consider that there was substantial evidence to support the verdict and that from all of the evidence before it the jury could most reasonably have arrived at the verdict which it did, it would be improper for me to render judgment inconsistent with the verdict or to set the verdict aside.

In view of the fact that the plaintiffs have laid so much stress upon the matter of whether a Coast Guard regulation was violated and whether there resulted from such alleged violation an imputation of negligence per se, I have given particular consideration to this contention. In the first place, there was a conflict of testimony as to whether a fire hose supplied with fresh water from a shore supply source was available at the No. 2 hatch through which sulphur was being unloaded at the time of the fire, and the jury might reasonably have concluded as a matter of fact that the regulation was not violated. But even if it had concluded that there was no fire hose supplied with fresh water from a shore supply source available at the No. 2 hatch, it might still have concluded that the fire was not greater or did not last longer or did not create or allow to continue a condition injurious to the plaintiffs because of the absence of the fresh water hose; that this omission was not the proximate cause of the fire or did not proximately bring about injury to the plaintiffs. There was no evidence which tended to show that the fire could have been more promptly or effectively brought under control by means of a hose containing fresh water from a shore supply source than by the use of a ship's hose pumping river water. If the jury concluded, as it could have from the evidence, that the actual prompt application of water from the ship's hose was as efficacious in quelling the fire as would have been the application of fresh water from a hose connected with a shore supply source, it would have been fully justified in finding that no negligence on the part of the defendant was to be imputed by reason of the failure to have available a hose with fresh water from a shore supply source, as this failure would not be proximately related to the plaintiffs' injuries.

In my charge to the jury, I instructed that it should consider from the evidence whether the defendant had done or had omitted to do anything which it was legally obligated not to do or to do and whether such action or omission was the proximate cause of the injuries claimed to have been suffered by the plaintiffs. The jury had before it when considering its verdict the applicable Coast Guard regulations and had been made aware of my interpretation in respect to the regulation bearing upon the availability of a hose containing fresh water from a shore supply source. The charge given by me had previously undergone full review by and discussion with counsel for the parties, had been reduced to writing before delivery and its contents were known to all counsel involved in the trial a considerable time before the charge was given. After the charge was read to the jury, I asked whether there were any other requests or any exceptions to the charge and counsel for the plaintiffs announced in open court that there were no other requests and no ex-

ceptions. Under these circumstances, I feel that the jury was adequately instructed on the matter of its arriving at a verdict in the light of the existence of the Coast Guard regulations and it is my opinion that the verdict should not be set aside on a contention by the plaintiffs at this time that there was error in the charge. I conclude that there was no error committed in charging the jury.

Upon reviewing the events of the trial, nothing has come to my attention which would indicate that a miscarriage of justice will result from the granting of judgment consonant with the verdict of the jury. I remarked at the conclusion of the trial that I did not know when I had tried a case "before a more intelligent and attentive jury" and I have no reason now to change my view in this respect. I do not believe that the jury was moved by passion or prejudice and I am convinced that it arrived at its verdict as the result of an earnest weighing of the facts put before it in evidence during the trial. Upon all disputed issues of fact, there was adequate evidence for the jury to have reached the verdict which it did. The respective parties to the action were represented by experienced and able counsel who were given full opportunity to present, and who did fully and fairly present, the contentions of their clients. Under these circumstances, I am of the opinion that the ends of justice require that I allow the verdict and the judgment rendered thereupon for the defendant to stand and that a miscarriage of justice would result from any other course.

In view of all of the foregoing, I conclude that the motion of the plaintiffs for judgment notwithstanding the verdict of the jury, or, in the alternative, for a new trial, should be denied and that the judgment heretofore rendered for the defendant should stand as the final judgment of this Court. Accordingly, it is

Ordered that the motion of the plaintiffs for judgment notwithstanding the verdict of the jury, or, in the alternative, for a new trial, be and it is, in all respects, hereby denied.