William VARELTZIS, Plaintiff,

v.

LUCKENBACH STEAMSHIP COMPA-
NY, Inc., Defendant.

United States District Court
S. D. New York.
June 6, 1957.

See also 20 F.R.D. 383.

George J. Engelman, New York City,
by O. Raymond Basile, New York City,
of counsel, for plaintiff.

Burlingham, Hupper & Kennedy, New
York City, by William M. Kimbal, and

Michael J. Kenny, New York City, of
counsel, for defendant.

EDELSTEIN, District Judge.

After a jury verdict for the
plaintiff on two causes of action under
the Jones Act, 46 U.S.C.A. § 688, the
defendant moves alternatively for a
judgment n. o. v. and for a new trial,
Rules 50(b) and 59, Federal Rules of
Civil Procedure, 28 U.S.C.A. Plaintiff,
a boatswain on the S. S. Florence Lucken-
bach at the time, alleged two accidents:
the first occurring while he was shoveling
snow off the main deck, and the second
occurring two days later when he slipped
on an icy deck in proceeding aft to the
boatswain's storeroom. On each cause
of action, the case was submitted to the
jury on the grounds of negligence and
unseaworthiness, and on both, the jury
indicated in response to interrogatories
that the defendant had been negligent
but that the vessel was not unseaworthy.
Two bases for the issues of negligence
were submitted by the charge of the
court for the consideration of the jury:
whether the defendant was negligent be-
cause the responsible ship's officer did
not cause sand or other abrasive material
to be spread upon the deck, and whether
the defendant was negligent in failing
to provide adequate tools to clear the
deck.

The defendant contends that there was
no evidence of negligence to go to the
jury, and that his motion for a directed
verdict at the close of all the evidence
should have been granted. The plain-
tiff's claim of inadequate tools to clear
the deck involved the absence of snow
shovels and ice chippers. I agree that
there was no evidence of negligence in
connection with the absence of snow
shovels. Nor does it appear to me that
the absence of ice chippers aboard was
of any great significance in view of plain-
tiff's admission that his department had
a number of long handled deck scrapers,
one of which was introduced into evi-
dence. Nevertheless, the evaluation of
that significance was an issue for the

jury to consider, in connection with an appraisal of the utility of the tool.

But the main issue about which the trial centered was the failure to sand the deck, and the main importance of this issue appears for the first accident. The plaintiff, with three others, was engaged in clearing the main deck of snow while the vessel was in port. There had been 5 or 6 inches of snow and two hours of sleet and freezing rain before the plaintiff began working. It rained continuously from 9:30 p. m., when he first came out on deck, until 1:30 a. m., when he claims to have slipped and fallen, during which time the thermometer rose a few degrees above freezing. The hatches were first cleared of snow by the use of fire hoses, and there is no dispute about the propriety of that procedure. Then the snow was pushed to the sides of the ship, one pile of about 3½ feet high, 3 feet wide and 15 to 18 feet long being pushed to the starboard rail between number 4 and 5 hatches. It was while attempting to shovel snow over the side from this pile that plaintiff testified he slipped on some ice inboard of the pile. The defendant argues that it was under no duty to sand the deck in these circumstances. Certainly, it would seem ridiculous to sand the deck generally before a snow removal operation. But the issue presented is whether, in the exercise of due care, it was necessary to sand at all before the entire operation was completed. It is a very close question. But in my opinion it was not unreasonable for the jury to have concluded that, in view of the weather conditions and of the conditions on deck testified to, a reasonably prudent ship's officer should have realized that there would be patches of ice under the snow removed; and that, in the exercise of due care, he should have had the cleared portions of the deck sanded promptly, or at least that part adjacent to the pile of snow on which the plaintiff was to work. A trial to the court might have resulted in a different conclusion; but "[t]he very essence of [the jury's] func-tion is to select from among conflicting inferences and conclusions that which it considers most reasonable." Tennant v. Peoria & P. U. R. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520. Under the Jones Act, "the test of a jury case is simply whether the proofs justify with reason [the conclusion] that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 523, 77 S.Ct. 457, 458, 1 L.Ed.2d 511, quoting from Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493. I am unable to rule in this case that the jury's conclusion under the proof was without reason.

The most troublesome problem in the case, however, is that involving the testimony about the occurrence of the first accident. I have the utmost of difficulty in comprehending how the plaintiff could have slipped and fallen in the manner in which he said he did. As he was about to shovel into the pile of snow, being left-handed, he crouched and leaned forward with his right foot extended, which slipped on ice. But he also testified that both feet then flew up into the air and he landed on the deck on his back. After much puzzled reflection I am left with the feeling that his story is unlikely. But I am not prepared to rule that it presents a physical impossibility. Minute and seemingly inconsequential physical movements or influences could well have played a significant part, perhaps not subject to precise description by an inarticulate seaman, and perhaps even unnoticed in the speed and surprise of the occurrence. I remain skeptical, but I am unwilling to insist that the jury, in a matter of this kind, could not have reasoned the question out to its satisfaction in the plaintiff's favor.

Defendant also complains about a reference by plaintiff's counsel in his summation to a theory of liability ruled out of the case. Suffice it to say that I

did not understand counsel's remarks to have been made in a prejudicial manner, and in any event, counsel for the defendant did not make a timely objection.

The motions are denied.