UNITED STATES of America,
Plaintiff–Appellee,

v.

Billy D. SOUTHERLAND,
Defendant–Appellant.

No. 05–10652.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 13, 2006.

Filed Dec. 1, 2006.

Matthew Stegman, Office of the U.S. Attorney, Sacramento, CA, for Plaintiff–Appellee.

Quin Denvir, Esq., Federal Public Defender's Office, Sacramento, CA, for Defendant–Appellant.

Before: KLEINFELD and THOMAS, Circuit Judges, and LARSON *, District Judge.

MEMORANDUM **

Billy Southerland ("Southerland") appeals his jury conviction for two counts of mail fraud and one count of wire fraud and the sentence imposed thereon. We affirm. Because the parties are familiar with the factual and procedural history of this case, we need not recount it here.

I

There was sufficient evidence to sustain the convictions. The record evidence is sufficient to support a conviction if, when viewed in the light most favorable to the prosecution, it would allow any rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *United States v. Shipsey,* 363 F.3d 962, 971 n. 8 (9th Cir.2004).

Under the relevant statutes, 18 U.S.C. § 1341 (mail fraud) and 18 U.S.C. § 1343 (wire fraud), "the essential elements" are: "(1) a scheme to defraud, and (2) a know-ing use of the mail to execute that scheme." *United States v. Beecroft,* 608 F.2d 753, 757 (9th Cir.1979). To demonstrate the first element, the fraudulent scheme, the prosecution must show "specific intent to defraud." *Id. Cf. Shipsey,* 363 F.3d at 971 (deeming specific intent a third element of the crime rather than a sub-element of the fraudulent scheme). Specific intent, however, need not be shown by direct evidence; rather, it "may be inferred from the defendant's statements and conduct." *Beecroft,* 608 F.2d at 757. Additionally, a fraudulent scheme need not involve outright lies. The government may rely on "deceitful statements of half-truths or the concealment of material fact," and it may show that a scheme was fraudulent by showing *either* that the defendant "made false representations" *or* that the scheme as a whole "was reasonably calculated to deceive persons of ordinary prudence and comprehension." *Id.; see also United States v. Munoz,* 233 F.3d 1117, 1129 (9th Cir.2000).

To demonstrate the knowing use of the mail or wires to execute the scheme, the government need not show that the charged mailing or wire transmission was "an essential element of the scheme"; it may show simply that the mailing or wire transmission was "a step in the plot." *Shipsey,* 363 F.3d at 971 (internal quotations omitted).

In this case, the evidence is sufficient to support the conviction if the totality of the evidence would allow a rational fact-finder to conclude that Southerland was engaged in a fraudulent scheme and that he used the mail, the internet, and the telephones

* The Honorable Stephen G. Larson, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

in furtherance of that scheme. Even in the absence of materially false statements of fact, the evidence is sufficient to show a fraudulent scheme if a rational fact-finder could reasonably infer from Southerland's statements and conduct that he intended to deceive persons of ordinary prudence and comprehension. Under this deferential standard of review, and after a careful review of the record, we conclude that the evidence at trial was sufficient to support Southerland's conviction.

The statements made by the jury on the special verdict form do not alter this conclusion. The purpose of a special verdict form, where used, is to "ease the process of appellate review" and to "encourage[ ] juries to focus their deliberations on the elements of the offense." *United States v. Poehlman,* 217 F.3d 692, 698 n. 7 (9th Cir.2000). Review for sufficiency of the evidence is an objective inquiry; it is not an investigation into the subjective thought process of the jurors. Although we must restrict our focus to the "the particular inference *or conclusion* drawn by the jury," *Tennant v. Peoria & P.U.R. Co.,* 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944) (emphasis added), we must uphold the conviction if any rational trier of fact could have reached the same conclusion as the jury—in other words, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Based on that extremely deferential standard, and viewing the evidence in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support the verdict.

## II

■ The district court did not abuse its discretion in admitting evidence of a newspaper article that Southerland hung on his wall or by admitting evidence about complaints submitted to the Better Business Bureau. When reviewing a district court's decision to admit or exclude evidence under Fed.R.Evid. 403, we give considerable deference to the trial court's determinations of prejudice and relevance. *United States v. Hankey,* 203 F.3d 1160, 1166–67. We will reverse the judgment only if the evidence more likely than not affected the verdict. *Id.*

Southerland has not demonstrated that admission of this evidence more likely than not affected the verdict. He makes no argument as to how admission of the newspaper article altered the verdict, and his only claim that admission of the complaints prejudiced the verdict is that the name "Better Business Bureau" implies authority.

Southerland put the Better Business Bureau complaints at issue himself, and we have clearly held that such complaints may be admitted to show that the defendant was on notice that customers were dissatisfied. *See United States v. Lasky,* 600 F.2d 765, 769 (9th Cir.1979).

Given these considerations, we conclude the district court did not abuse its discretion by admitting the evidence.

## III

■ The district court did not err in instructing the jury. Contrary to Southerland's assertion, the instructions adequately covered Southerland's defense theory, which was fully argued to the jury. The district court's decision not to submit a good faith instruction to the jury was justified because the district court gave adequate instructions on specific intent as an element of the offense. *United States v. Frega,* 179 F.3d 793, 804 (9th Cir.1999). Southerland's argument that the district court improperly instructed on the element of intent is foreclosed by *United States v. Shipsey,* 363 F.3d 962, 967 (9th Cir.2004).

## IV

The district court did not err in calculating the applicable sentencing range under the United States Sentencing Guidelines ("U.S.S.G.") or in setting a restitution amount under the Mandatory Victims Restitution Act ("MVRA").

### A

■ In calculating a loss amount, the district court correctly applied a "clear and convincing" evidentiary standard because the determination of that amount would have "an extremely disproportionate effect on the sentence." *United States v. Munoz*, 233 F.3d 1117, 1126–27 (9th Cir.2000). We find that the evidence and the rationale put forward in the Rule 32 sentencing order were both clear and convincing.

Under the Guidelines, the sentencing enhancement for the amount of loss increases as the loss increases, but a single enhancement applies for a range of possible loss. In other words, the same enhancement applies if the loss is anywhere between $5,000 and $10,000, but the enhancement is greater if the loss is between $10,000 and $30,000, et cetera. For present purposes, it is important that Southerland's enhancement would have been 14 points if the actual or intended loss had been anywhere between $400,000 and $1,000,000. *See* U.S.S.G. § 2B1.1 & cmt. n.3.

Based on the testimony of a duly qualified computer expert, the district court found that the loss definitely exceeded $400,000 but did not exceed $1,000,000, and he applied a 14–point enhancement. Although the parties argued over the correct permutation of evidence, Judge Burrell found that the loss amount fell within the same range for enhancement purposes irrespective of which combination of factors he chose. The loss was $731,800 under one permutation, $604,585 under a differ-

ent permutation, and $439,400 under the last permutation. The differences in the figures depended first on whether the court included only the $200 non-refundable booking fee or, instead, included all money that was not refunded and, second, on whether the court included all customers for the relevant time period or, instead, included only those customers whose orders were canceled. Each combination of evidence reflects an acceptable method for estimating actual and intended loss under the Guidelines, and each combination of evidence yields the same 14–point enhancement under § 2B1.1. There was no credible argument advanced either the intended or actual loss was less than $400,000. Therefore, we see no error in the district court's imposition of a 14–point enhancement for loss exceeding $400,000.

### B

■ The restitution amount ordered under the MVRA was significantly less than any of the loss figures found at sentencing. At first blush, the variance in the two figures would appear problematic. However, on closer inspection, the record supports the district court's conclusion.

The requirements for imposing restitution are different from the requirements for the calculation of loss for Guideline purposes. Under the MVRA, restitution must include only those losses that were "directly and proximately" caused by the defendant's scheme. 18 U.S.C. § 3663. This requirement places a higher evidentiary burden on the restitution calculation than exists for the Guidelines calculation; the Guidelines calculation may rest on a mere estimation. *See* U.S.S.G. § 2B1.1 cmt. n.3(C).

In this case, although the government received several victim impact statements that reported actual losses exceeding $200, the government could not meet its burden

of proving that those victims were the same people whom the computer reported as having paid in full without refund. The district court therefore determined that the government had conclusively proved only a $200 loss per reporting victim, and he ordered restitution in that amount. Although the number of reporting victims was less than the number of computer-generated victims, we do not find that disparity terribly surprising given that many customers may have been hard to locate. We therefore conclude that the restitution amount was neither erroneous nor arbitrary.

### C

There was no error in finding more than fifty victims or in finding that Southerland was a leader of criminal activity. These findings were not subject to proof beyond a reasonable doubt, *see United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and the district court properly supported both conclusions.

**AFFIRMED.**