NEWMAN, Circuit Judge,
dissenting.
I respectfully dissent, for substantial evidence supported the jury verdict, as was recognized by the district court in denying *1350 judgment as a matter of law. My respected colleagues on this panel have not shown the absence of such evidence; indeed, they appear to recognize that it was present. There is no sufficient ground for this court’s independent appellate trial of the factual issues that were decided by the jury and sustained by the district court.
In reviewing a jury verdict, the court must draw all reasonable inferences in favor of the verdict, without making credibility determinations and without reweighing the evidence. See, e.g., Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (“although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe.”). When reviewing a jury verdict, it is impermissible for the appellate court to substitute its own findings based on the evidence that was before the jury, for “[cjredibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).
The device that is shown in the Hopkins patent fragments blood clots through the rotation of a wire structure at the end of a lumen inserted into the blood vessel. This structure is claimed as a “fragmentation member,” for when rotated the wires fragment the blood clot, scouring the blood vessel. No fragmentation occurs until the structure is rotated. The accused device also fragments blood clots through the rotation of a wire structure at the end of a lumen inserted into the blood vessel. This structure consists of a single S-shaped wire, not a group of wires as shown by Hopkins. When rotated, the S-shaped wire fragments the blood clot, scouring the blood vessel. No fragmentation occurs until the structure is rotated. A reasonable jury could have found that this wire structure is a “fragmentation member” of the claims, for both the Hopkins device and the Datascope device fragment the blood clot through the action of rotating wires.
Another claim limitation is that the fragmentation member “expands to conform” to the blood vessel. The wire structure at the end of the Hopkins lumen spreads, after release from the end of the lumen by which it is inserted, to contact the clot material in the blood vessel. The S-shaped wire structure at the end of the Datascope lumen also spreads, after release from the end of the lumen by which it is inserted, to contact the clot material in the blood vessel. When rotated, both structures conform to the size of the blood vessel where they are rotating.
The Hopkins evidence presented to the jury stressed the similarities of the wire structures and their fragmentation action. The Datascope evidence presented to the jury stressed the differences of the wire structures and their fragmentation action. Datascope showed an animation of the accused device and both experts testified as to that animation. The jury saw the competing devices, and their operation was explained. Hopkins’ expert Dr. Valji testified that the S-shaped wire at the end of the lumen in the accused device is a fragmentation member in that when it rotates it fragments the clot by wire action, like the wires at the end of the lumen in the Hopkins device. In considering the “wire cage or basket” shape of the Hopkins device, the jury heard Dr. Valji’s testimony that “when ... in ... operable position, this S-shaped wire takes on the configuration essentially of a basket.” Record at *1351 A445. Dr. Valji also testified that the accused device “when allow[ed] ... to expand by deployment, will expand both the shape and diameter of the inner lumen of ... the graft” meeting the “expands to conform” claim limitation. Record at A436. Datascope made contrary arguments, urging opposite conclusions.
The jury found infringement, on instructions that were agreed by the parties. The district court, denying Data-scope’s JMOL motion, stated that “[t]he jury’s finding was certainly not against the clear weight of the evidence.” Indeed, there was substantial evidence in support of the verdict. Whether or not there was also substantial evidence on the other side, “[a]n appellate court cannot substitute its interpretation of the evidence for that of the trial court simply because the reviewing court ‘might give the facts another construction, resolve the ambiguities differently, and find a more sinister cast to actions which the District Court apparently deemed innocent.’ ” Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 857-58, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982) (quoting United States v. Real Estate Boards, 339 U.S. 485, 495, 70 S.Ct. 711, 94 L.Ed. 1007 (1950)). I do not disagree that there was evidence and argument on Datascope’s side. However, it is not our province to reweigh the evidence, when there was substantial evidence by which a reasonable jury could have reached its verdict. See Tennant v. Peoria & Pekin Union Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 88 L.Ed. 520 (1944) (“Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn difference inferences or conclusions or because judges feel that other results are more reasonable.”); DMI, Inc. v. Deere & Co., 802 F.2d 421, 427 (Fed. Cir.1986) (“When ... there are conflicting elements in the evidence, neither the trial court on JNOV nor this court may substitute its choice for that of the jury.”).
As the district court explained, a reasonable jury could have reached the verdict of infringement. I must, respectfully, dissent.