305 F.2d 189
 Max REINER, Appellant,
v.
BANKERS SECURITY CORP., a Corporation Doing Business as Sylvania Hotel, and James F. Hickey, a Person or Corporation Doing Business as Sylvania Hotel.
 No. 13584.
 United States Court of Appeals Third Circuit.
 Argued October 30, 1961.
 Decided June 28, 1962.
 
 James L. Stern, Philadelphia, Pa., for appellant.
 John B. Martin, Philadelphia, Pa. (John M. Ross, Henry T. Reath, Duane, Morris & Heckscher, Philadelphia, Pa., on the brief), for appellees.
 Before McLAUGHLIN, STALEY and FORMAN, Circuit Judges.
 FORMAN, Circuit Judge.
 
 
 1
 Appellant, Max Reiner of Miami, Florida, sued the appellees, Bankers Security Corp., and James F. Hickey, both of Pennsylvania, respectively owner and operator of the Sylvania Hotel in Philadelphia, for damages for personal injuries, in the United States District Court for the Eastern District of Pennsylvania. Mr. Reiner charged the appellees with maintaining a nuisance and negligence in that the carpet covering the floor of Room 615 in the hotel, which he had occupied for about three weeks, was not in a safe condition, and that they knew or should have known of the hazards it presented. He further charged that he tripped on a worn section of the carpet, fell and suffered injuries for which he sought damages.
 
 
 2
 A jury trial was held during which Mr. Reiner testified that he was about to terminate his business visit to Philadelphia on March 5, 1955 and left his room in the late morning to have lunch, check out and make a purchase prior to his emplaning for Pittsburgh. On returning to his room in the early afternoon he testified that he entered it, walked a few steps when the toe of his right foot "got caught and wedged tightly";[1] that he fell forward and struck his head against the radiator in the room and lost consciousness; that when he regained it there were several people in the room; that the table had been knocked over and the telephone and lamp on it had been thrown to the floor. Mr. Reiner further testified that a Dr. Davitch[2] appeared and administered first aid to him; that his brother, William Reiner, a resident of Philadelphia, came to him in response to someone's call; that his brother telephoned for a photographer to come and take pictures of the carpet, which was done before he was removed by his brother to the latter's apartment late in the afternoon; that in the fall his head and thigh had been hurt. He identified the picture taken by the photographer showing a worn section of the carpet in front of the bureau in the room, part of which had separated and showed a cup like protuberance.
 
 
 3
 Mr. Reiner's brother, William, testified that he had responded to a call notifying him that Mr. Max Reiner had had an accident, and found his brother lying on the floor of the room with injuries to his head and thigh; that a number of people were in the room and that a doctor was caring for him; that he and the doctor lifted him to the bed. He stated that, pursuant to a suggestion by someone he called a photographer and had pictures taken of the condition of the carpet; that he and one of his employees in the afternoon moved Mr. Max Reiner to his (William's) apartment.
 
 
 4
 A Mr. Disbrow was called for the defense who testified that he was a room clerk on duty at the desk of the hotel on the afternoon of the accident; that the telephone operator notified him that something was wrong in Mr. Reiner's room as she could hear strange sounds on the switchboard; that he repaired to the room and was joined shortly thereafter by Mr. Weaver, another room clerk; that he found Mr. Reiner lying on the floor breathing heavily and was told by him that he had tripped and fallen and the lamp had struck him on the forehead; that Mr. Weaver and the witness placed Mr. Reiner on the bed and the doctor was called. Mr. Disbrow identified the photographs of the carpet stating that the photograph depicted a broken seam in the carpet measuring some 15 to 20 inches, which he said was located in front of the bureau in the room. Mr. Weaver corroborated Mr. Disbrow, stating that he assisted him in placing Mr. Reiner on the bed. He observed a small bump on Mr. Reiner's forehead and noticed that the seam in the carpet had been ripped. He left the room before the arrival of the doctor.
 
 
 5
 Mr. Max Reiner's testimony covered one and a half days except for an interruption to give one of his doctors an opportunity to testify. In the afternoon of the second day of the trial the judge explained to the jury that following a conference with counsel he had concluded to submit to the jury the question of liability which would be tendered to it in the form of a questionnaire and that depending upon its answers would be the termination of the trial or the taking of further testimony on the issue of damages and a separate verdict on that feature of the case if it came to the second issue.
 
 
 6
 Appellant and appellees concluded the testimony of their respective witnesses and rested their cases on the third day. The court showed counsel the special verdict questions which he proposed to propound to the jury under Rule 49(a) of the Federal Rules of Civil Procedure.[3] No objection was made to their form or to the manner in which they were submitted. The questionnaire consisted of the following four interrogatories:
 
 
 7
 (1) "Was the defendant guilty of negligence." The jury was told that if its answer was "No" to this question it need not pursue its inquiry but should return that answer as its verdict. If, however, its answer was "Yes" then it was to answer the next question, as follows:
 
 
 8
 (2) "Did such negligence cause the fall described by the plaintiff." If its answer was "No" the inquiry would end and it would so report. If its answer was "Yes" then it would proceed to the next question which was:
 
 
 9
 (3) "Was the plaintiff guilty of negligence." If it found "No" as the answer to this question its inquiry would terminate there, but if the answer was "Yes" then it would apply itself to the final question:
 
 
 10
 (4) "Did that negligence contribute to the fall."
 
 
 11
 The jury responded to question (1) "Was the defendant guilty of negligence." with the answer "Yes", but to question (2) "Did such negligence cause the fall described by the plaintiff." with the answer "No". The jury was thereupon polled and affirmed its verdict.
 
 
 12
 In accordance with the special verdict rendered by the jury the court ordered judgment in favor of the defendants.
 
 
 13
 A motion was made for a new trial and for judgment n. o. v., which was denied.
 
 
 14
 This appeal ensued in which the following grounds are charged: (1) that the jury's answers to the special interrogatories were inconsistent, contradictory, arbitrary and unsupported by the evidence and (2) that the case was improperly submitted because (a) the issue of causation was not explained to the jury and (b) the jury was improperly influenced by the circumstances of the submission of the case.
 
 
 15
 -I-
 
 
 16
 Appellant argues that the jury's answer to special interrogatory No. 2 ["Did such negligence cause the fall described by the plaintiff."] flatly contradicts No. 1 ["Was defendant guilty of negligence."].
 
 
 17
 Appellant submits that the version of the fall he gave at the trial stands undisputed except for the appellees' introduction of his testimony on pretrial deposition; that it is corroborated by the condition of the carpet as indicated in the pictures and by his witnesses; that appellees' witnesses concurred with him concerning the condition of the room and offered nothing to cast suspicion on his version of the fall. He argues that since the maintenance of the defective carpet was the only negligence pleaded by him it must have been that to which the jury referred in its affirmative answer. He reasons from this that the defective carpet must have been the only cause of the accident. In effect, appellant claims that the jury had no choice but to find that the condition of the carpet was the cause of the accident and hence its negative answer was "grossly inconsistent, incongruous and beyond explanation", clearly manifesting that the verdict was the result of "mistake, caprice, prejudice or other improper motive." The appellant cites as precedents buttressing his position Devine v. Patteson, 242 F.2d 828, 832 (6 Cir. 1957); Pascarella v. Pittsburgh Rys. Co., 389 Pa. 8, 131 A.2d 445 (1957) and Allstate Ins. Co. v. Springer, 269 F.2d 805 (6 Cir. 1959). However, none of these authorities are applicable to the present issue.[4]
 
 
 18
 In Celanese Corp. of America v. John Clark Industries, 214 F.2d 551 (5 Cir. 1954) the court had before it purported inconsistencies of answers to special verdict interrogatories that the plaintiff was guilty of negligence on the one hand, but on the other, that his negligence was not the proximate cause of the fire losses involved in the suit. It found that the submission of the two issues under separate questions was usual and proper and that the answers as above were not inconsistent. The court cited with approval the following rule:
 
 
 19
 "`It is the duty of the trial court to reconcile apparent conflicts in the jury's finding if they can be reasonably done in the light of the pleadings and the evidence, the manner in which the issues were submitted, and in view of the other findings when considered as a whole.'" 214 F.2d at 556, citing Ford v. Carpenter, 147 Tex. 447, 216 S.W. 558.
 
 
 20
 See also Morris v. Pennsylvania R. Co., 187 F.2d 837 (2 Cir. 1951); Halprin v. Mora, 231 F.2d 197, 200 (3 Cir. 1956).
 
 
 21
 No argument is made that the trial judge exceeded his discretion in propounding the questions for the special verdict. Indeed, neither of the parties objected to this procedure.
 
 
 22
 The appellant was the only witness as to how the accident occurred. It is true that the condition of the room and the carpet as found by other witnesses, both for the appellant and the appellees, could have been accepted by the jury in support of the appellant's version that the condition of the carpet caused him to fall; but the jury had within its sole province the determination of the factual basis of the cause of the accident and to form its conclusion in this regard it was required to look to all of the evidence and to test the credibility of the appellant in his recitation of his version of the accident. Apparently it was not convinced that he had sustained his burden of proving that the negligence of the appellees was the cause of the accident.
 
 
 23
 Just what actuated the jury in coming to its decision is not revealed. Direct proof of any other cause was lacking. But this could not thwart the jury's right to find that the version appellant offered was not entitled to credit. This could have been engendered by the inconsistency in his testimony at the trial with the statements made in his pre-trial deposition, or even by his demeanor while testifying, or his responses to other tests which jurymen may apply in examining the credibility of witnesses appearing before them.
 
 
 24
 In Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520, the Supreme Court said:
 
 
 25
 "* * * The very essence of its [the jury's] function is to select from among conflicting inferences and conclusions that which it considers most reasonable. Washington & Georgetown R. Co. v. McDade, 135 U.S. 554, 571, 572 [10 S.Ct. 1044, 34 L.Ed. 235]; Tiller v. Atlantic Coast Line R. Co., supra, [318 U.S. 54] 68 [63 S.Ct. 444, 451, 87 L.Ed. 610]; Bailey v. Central Vermont Ry., 319 U.S. 350, 353, 354 [, 63 S.Ct. 1062, 87 L.Ed. 1444]. That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable."
 
 
 26
 And recently the United States Supreme Court considered the effect of inconsistency in a jury's answers to special interrogatories in Atlantic & Gulf Stevedores, Inc. v. Ellerman, 369 U.S. 355, 82 S.Ct. 780, 786, 7 L.Ed.2d 798. The Court commented:
 
 
 27
 "* * * Where there is a view of the case that makes the jury's answers to special interrogatories consistent, they must be resolved that way. For a search for one possible view of the case which will make the jury's finding inconsistent results in a collision with the Seventh Amendment. Arnold v. Panhandle & S. F. R. Co., 353 U.S. 360 [, 77 S.Ct. 840, 1 L.Ed.2d 889]. Cf. Dick v. New York Life Ins. Co., 359 U.S. 437, 446 [, 79 S.Ct. 921, 3 L.Ed.2d 935]."
 
 
 28
 In the present case the jury simply did not accept the appellant's account of the accident and did not connect causally the defective carpet with his injuries. A review of the record leads to the conclusion that the interrogatories were proper and that the answers to them contained no fatal inconsistency. Nor is there any clear manifestation that the verdict was the result of mistake, caprice, prejudice or improper motive.
 
 
 29
 -II-
 
 
 30
 (A) Appellant next complains of inadequate treatment by the trial court in its charge of the issue on causation.
 
 The trial judge instructed the jury that:
 
 31
 "* * * This case revolves around the subject of negligence; this case is bottomed on negligence. The plaintiff alleges that the Sylvania Hotel management was negligent in the way they conducted his room, the way in which they maintained it, and that they had notice of a condition which was dangerous, as the plaintiff claims, and as a result of the negligence of the defendant in not meeting that situation, Mr. Reiner was injured.
 
 
 32
 "Now, what is negligence. The Supreme Court has settled that for us by declaring that negligence is the want of due and proper care. It is the doing of something which the ordinary, prudent man or woman would not do under the circumstances, or the failure of doing something which the ordinary, prudent man or woman would do under the circumstances. Now that is a definition of negligence. * * *" (Emphasis supplied.)
 
 
 33
 In posing the interrogatories to the jury he said:
 
 
 34
 "* * * The first thing I ask you is this:
 
 
 35
 "`Was the defendant guilty of negligence.'
 
 
 36
 "I ask you to answer that yes or no. * * *
 
 
 37
 "If your answer is No to that point, nothing else counts, you don't answer any other thing. * * * If you are all in agreement on that, come in with your verdict. If not, you pass on to the next question.
 
 
 38
 "* * * If your answer is Yes, that he is guilty of negligence, I ask you this:
 
 
 39
 "`Did such negligence cause the fall described by the plaintiff.'
 
 
 40
 "In other words, was the defendant hotel guilty of such negligence as caused Mr. Reiner's fall. Now, you answer that yes or no.
 
 
 41
 "Now if your answer is No, do not answer the interrogatory that follows."
 
 
 42
 The appellant's complaint is that the instructions of the trial judge on the subject of causation were minimal and could have been the basis of a misconception on the part of the jury which could have been eliminated by a brief discussion of the facts in relation to legal cause. This entirely speculative criticism of the court's charge fades on a reading of it in combination with the second interrogatory and the terse comment in connection therewith. There was a simple factual determination for the jury to make. Either it believed the appellant who testified that he tripped on the defective carpet or it did not believe he suffered his injuries in the manner in which he described. The charge was not as artistic as it could have been, but it appears to have been sufficiently adequate to apprise the jury of the issue of causation in the light of the special interrogatories. The following comment by Professor Moore is pertinent here:
 
 
 43
 "Use of the special verdict eliminates the necessity for and use of complicated instructions on the law, which are a normal concomitant of the general verdict. * * * When the special verdict is used the court should give to the jury only such explanation and instructions as it deems necessary to enable the jury to make intelligent findings upon the issues of facts submitted." 5 Moore's Federal Practice § 49.03 [3] at 2207 (2 ed. 1951).
 
 
 44
 Moreover, the appellees point out that although the appellant submitted requests for instructions to the jury, all of which the trial judge affirmed in his charge, he failed to include a request to charge on causation. Nor did he take exception to what he regarded as an omission from the charge before the jury retired to consider its verdict as required by Federal Rule of Civil Procedure No. 51.[5] Therefore appellant has no standing now for the first time to introduce his objection to an omission in the charge of the judge unless it is apparent on the face of the record that a miscarriage of justice may occur.
 
 
 45
 In Callwood v. Callwood, 233 F.2d 784, 788 (3 Cir. 1956) it was said:
 
 
 46
 "* * * We might, perhaps, in an extreme situation consider an objection to the charge, even in a civil case, made for the first time on appeal. We would not do so, however, unless the error in the charge was fundamental and highly prejudicial, and our failure to consider the error would result in a gross miscarriage of justice. * * *"
 
 
 47
 See Thorp v. American Aviation and General Insurance Co., 212 F.2d 821, 825 (3 Cir. 1954). This test is not met here.
 
 
 48
 (B) Finally, the appellant contends that the jury was improperly influenced by the circumstances under which the trial court submitted the case to it on its aspect of liability only.
 
 
 49
 On the morning of the second day of trial cross examination of appellant was deferred to permit one of his expert witnesses, a neurologist, to testify. The cross examination of appellant then resumed which lasted until noon. Thereafter his counsel announced that he proposed to read into the record some depositions of doctors. The court was then adjourned for the luncheon recess and to permit the judge to attend a conference of his colleagues.
 
 
 50
 When the court convened in the afternoon the judge called a conference of counsel with the jury absent following which the jury returned to the court room and the judge announced:
 
 
 51
 "Members of the Jury, I am going to excuse you until tomorrow morning at ten o'clock. While you were absent, I had a conference with counsel out here at the table. * * * You are undoubtedly aware from what you have heard, that there are two, at least, two major questions that you will finally be required to decide. One was whether or not the accident happened as it did, as it was said to have happened, in that hotel room, whether or not the plaintiff was guilty of contributory negligence, whether or not the defendant was negligent, and whether or not the negligence and the happening of that event, brought about the physical conditions of which plaintiff complains.
 
 
 52
 "Now, tomorrow, we are going to resume with testimony bearing on the first question: Whether or not there was any contributory negligence or negligence, and you will be asked at the end of that inquiry, after presentation of evidence from both sides, to retire and say yes or no, and we will give you a form of questionnaire involving only two points, to say yes or no to. If your answer is one way, we will go on then with the neurologists and the expert testimony. If it is another way, the case will end right there, because you can see there is no use of us going on with all this technical testimony because there are many experts to come, and we would not finish this case likely this week, but the question of time is not the controlling feature in our proceeding this way, it is a question of logic and expedition. If you will keep your minds entirely open, and your mouths shut until tomorrow morning, take your place in the box, we will go on with our fact situation and proceed in that way. This way, it is going to be a clearer question to you, to break it up in those two parts, and it will facilitate your decisions, and also facilitate the progress of the trial.
 
 
 53
 "I thought I would like to tell you what we have done and why you were out, and why you were being excused until tomorrow morning. * * *"
 
 
 54
 The appellant took no exception to the procedure and we may assume consented thereto at the conference with the judge.
 
 
 55
 On the morning of the third day two witnesses testified on behalf of appellant. His counsel spoke of miscellaneous matters, read interrogatories directed to the appellee, Bankers Security Corporation, and its answers and rested his case.
 
 
 56
 The appellees then produced two witnesses. After the cross examination of the second witness appellees rested and the court recessed for lunch. Closing speeches were made by counsel in the afternoon session. The jury retired and a discussion took place concerning the instructions to the jury.
 
 
 57
 The jury was charged on the following day.
 
 
 58
 As against the foregoing chronology, appellant claims that the timing of the court's comments quoted above concerning the submission of the case to the jury on liability only was such that it must have indicated to the jury that something was wrong with the appellant's case, for by making remarks "immediately after the plaintiff had given his testimony the court affixed a stigma of inadequacy." As a matter of fact the court did not make its comment immediately after the appellant finished his testimony. A lapse intervened during which a colloquy occurred between appellant's counsel and the court concerning the reading of depositions of doctors and a long recess was taken for lunch and to permit the judge to attend a conference with his colleagues. It was not until the court convened in the afternoon and after a discussion with counsel that the court made its comment.
 
 
 59
 The appellant submits that the comment was made after his cross examination on a deposition he gave before the trial which developed a discrepancy in his testimony, which he argues was not really an inconsistency, and before the testimony of appellees' witness, Disbrow, who, the appellant asserts, really corroborated him. He insists that the comment indicated a lack of belief in appellant's testimony by the court and that an added onus was created by the "unique" submission of the case to the jury.
 
 
 60
 The appellant suggests that the court could have waited until all of the evidence on the issue of liability had been completed before making the comment or he could have made it at the outset. The objection coming now is certainly the product of hindsight.
 
 
 61
 We cannot agree that either the timing or the content of the trial court's comment limiting the submission of the case to the issue of liability took on any of the hue ascribed to it by appellant. There was nothing in it from which the jury could have drawn the slightest inference that the judge did not believe the appellant. He was acting well within his discretion in separating the issues for the jury's consideration. There is no substance to the appellant's claim that he was prejudiced in the eyes of the jury by reason of the comment in question or its timing.
 
 
 62
 The judgment of the District Court will be affirmed.
 
 
 
 Notes:
 
 
 [1]
 On cross-examination it was brought out that at an examination before trial Mr. Reiner described the occurrence of the accident as follows:
 "* * * Now that must have been about 1:30 or 2:00 o'clock when I came into the room, and daylight struck me as fast as I come in, almost. Maybe I entered a dozen paces, and from there on I don't know.
 "Q. In other words —
 "A. What I saw after I come out was vague. A little upset, lying on the floor, and then they filled me in later on when I come to maybe an hour or two later what had happened.
 "Q. This had happened then, just as you entered your room, as you said, I believe, you had taken ten or twelve paces?
 "A. That's right. I walked in casually, like a person does, and that is all I knew until I must have come to, * * *."
 
 
 [2]
 Dr. Davitch could not be present at the trial and on consent his report was read into the record. It follows:
 "First aid rendered Maxwell Reiner, age 65, 912 Gallatin Street, Washington, D. C. At 2:30 p.m., on 3-5-55, tripped on a rug in Room 615 at the Sylvania Hotel. He struck his head against the wall, and the table was also knocked over and struck him. He then lost consciousness. Cerebral concussion, contusions to right side, contusions of the skull.
 "RX, first aid, referred to his own M.D."
 
 
 [3]
 Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C. reads:
 "(a) Special Verdicts. The court may require a jury to return only a special verdict in the form of a special written finding upon each issue of fact. In that event the court may submit to the jury written questions susceptible of categorical or other brief answer or may submit written forms of the several special findings which might properly be made under the pleadings and evidence; or it may use such other method of submitting the issues and requiring the written findings thereon as it deems most appropriate. The court shall give to the jury such explanation and instruction concerning the matter thus submitted as may be necessary to enable the jury to make its findings upon each issue. If in so doing the court omits any issue of fact raised by the pleadings or by the evidence, each party waives his right to a trial by jury of the issue so omitted unless before the jury retires he demands its submission to the jury. As to an issue omitted without such demand the court may make a finding; or, if it fails to do so, it shall be deemed to have made a finding in accord with the judgment on the special verdict."
 
 
 [4]
 In Devine v. Patteson, 242 F.2d 828 (6 Cir. 1957), a suit for malicious prosecution, the verdict was for the plaintiff for $500 compensatory damages and $1 for punitive damages. The verdict for compensatory damages was less than the undisputed amount of loss shown. This was held to be an inconsistency that justified setting aside the judgment as to compensatory damages and ordering a new trial on that issue
 In Pascarella v. Pittsburgh Rys. Co., 389 Pa. 8, 131 A.2d 445 (1957), jury verdicts were awarded in favor of parents of minor children for their medical expenses in an accident case but no awards were made to the minor plaintiffs. This was held to be so inconsistent as to justify a new trial.
 In Allstate Ins. Co. v. Springer, 269 F. 2d 805 (6 Cir. 1959) questions were submitted to a jury as to the truth or falsity of answers on an application for insurance. The jury found the answers to be true notwithstanding uncontradicted testimony that they were false. The submission to the jury of questions as to the verity of answers to questions in the insurance application were held to be improper in any event.
 
 
 [5]
 Federal Rule of Civil Procedure No. 51 provides:
 "At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the court shall instruct the jury after the arguments are completed. No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. Opportunity shall be given to make the objection out of the hearing of the jury."