Joseph **MILLIRON**, Administrator of the Estate of Ross T. York, Deceased, Plaintiff,

v.

George P. **BAKER** et al., Defendants.

Civ. A. No. 69–525.

United States District Court, W. D. Pennsylvania.

Jan. 2, 1973.

Paul E. Moses, of Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Wilbur McCoy Otto, of Dickie, McCamey & Chilcote, Pittsburgh, Pa., for defendants.

## OPINION AND ORDER

MARSH, Chief Judge.

I quite appreciate the disappointment and dissatisfaction of the invalid widow and plaintiff's counsel with the jury verdict in favor of the defendant. Usually it is a surprise when a railroad wins a FELA case by jury verdict. However, in this unusual case, it is my opinion that plaintiff's motion for a new trial must be denied.

The plaintiff-administrator assigns the following reasons for a new trial:

"1. The verdict was against the weight of the evidence.

"2. Plaintiff was deprived of his right to trial before a jury of twelve persons and was compelled to submit his case to a jury of less than twelve.

"3. The Court erred in instructing the jury concerning the testimony of Dr. Caplan.

"4. The Court erred in instructing the jury as to plaintiff's contentions of negligence and in limiting such contentions solely to the issue of whether Dr. D. W. Bishop should have caused plaintiff's decedent to be hospitalized.

"5. The Court erred in limiting the jury's determination of negligence by the defendant to the issue of whether Dr. Bishop should have caused decedent to be hospitalized."

*Reason No. 1*

█ I cannot find that the verdict was clearly against the weight of the evidence. The plaintiff contended and offered proof that Dr. Denning and Dr. Bishop, the railroad's doctors, were negligent in that after taking a history of Mr. York's pains and medication, and after examination of his current and prior electrocardiograms, they did not recognize an impending myocardial infarction and immediately commit him to a hospital or immediately advise his personal physician, Dr. Ayers, of an incipient and urgent problem, but instead advised York that there was no significant change in his cardiograms and he returned home reassured. Plaintiff contends that York's life might have been saved in a hospital and, therefore, the negligence of the railroad's doctors contributed to Mr. York's death early the next morning at his home.

On the other hand the defendant contended and offered proof that the current electrocardiogram was properly interpreted by Dr. Bishop in the light of

plaintiff's history and prior electrocardiograms; that pursuant to existing standards of medical care there were no symptoms which indicated immediate hospitalization. The evidence on behalf of the railroad tended to prove that its doctors were not guilty of any negligence in the circumstances, and raised considerable doubt that York's life would have been saved even had he been hospitalized. The defendant's evidence was sufficient to present jury questions of negligence and causation.[1]

Inconsistencies were developed in the opinion testimony of the medical experts on each side which, of course, were for the jury to reconcile. The verdict winner is entitled to all inferences that may reasonably be drawn from the evidence. The reasonable inferences to be drawn from the testimony of Dr. Bishop and Dr. Canter, and even from the plaintiff's medical witnesses, Dr. Brandon and Dr. Ayers, were sufficient to support the verdict.

Although I might have come to a different conclusion as trial judge, "courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 35, 64 S.Ct. 409, 412, 88 L.Ed. 520 (1944); Reiner v. Bankers Security Corp., 305 F.2d 189, 193 (3d Cir. 1962). " * * * [T]he continuing concern of the courts of the United States [is] that in the federal forum the constitutional right to jury trial [should] not be eroded by judicial intrusions upon the province of the jury * * *." Rumsey v. Great Atlantic and Pacific Tea Company, 408 F.2d 89, 91 (3d Cir. 1969); cf. Lind v. Schenley Industries, Inc., 278 F.2d 79, 89–91 (3d Cir. 1960). I cannot perceive any clear manifestation that the jury reached a seriously erroneous result, or that its verdict was arbitrary or the result of caprice, prejudice or improper motive.

### Reason No. 3

In the charge, no detailed summary of the testimony of the expert medical witnesses on either side was attempted. I merely called to the jury's attention that the four medical experts rendered opinions, and mentioned, as illustrative, that the principal contentions of each party were supported by expert medical opinion. I did not attempt to state all the opinions or to analyze the internal inconsistencies which cropped up on direct and cross-examination.[2] The members of the jury were admonished that the opinions of experts were not facts but conclusions which they were to evaluate in the light of the evidence.

### Reasons 4 and 5

I cannot acquiesce in plaintiff's argument that the instructions limited his contentions of negligence solely to the issue of whether Dr. Bishop should have caused the deceased to be hospitalized.

The jury was told:[3]

"The plaintiff-administrator contends that York's death was caused in whole or in part by the negligence of the Penn Central Railroad through its doctors * * *.

" * * * *

"In order to find the railroad liable in damages, you must first find that

1. Defendant strenuously argued that there was insufficient proof to show that the negligence of its doctors, if that be found, was the proximate cause, in whole or in part, of York's death. I thought if the jury found negligence, that it could infer, although it was not bound to do so, that the failure to commit York to a hospital equipped for cardiac emergencies contributed in some degree to his death.

2. At one point during cross-examination, plaintiff's expert denied that the railroad's doctors were negligent or guilty of malpractice.

3. The following quotations are from the written charge delivered by the court and not from the reporter's official transcript which is not yet filed.

the railroad by its officers, agents or employees, was negligent, and if you find any such negligence, you must next find that this negligence contributed in whole or in part to the death of Mr. York. If the railroad's negligence contributed to his death even in the slightest degree, the railroad is liable."

Negligence was defined and the jury was instructed that Dr. Denning and Dr. Bishop were employees of the railroad in 1967.

In reviewing the evidence I stated:

"The plaintiff contends that the railroad's doctors were negligent in that they failed to *promptly recommend to Dr. Ayers that Mr. York be immediately sent to a hospital where his heart disease might have been treated before it developed into the acute myocardial infarction which caused his death; the plaintiff contends that it was negligence on the part of the railroad's doctors to permit Mr. York to go home after the electrocardiogram was taken and that it was foreseeable that an acute heart attack might develop.*

" * * * The plaintiff wants you to believe that the doctors in the railroad's medical department should have seen a significant change in the 1967 [York] cardiogram when compared with the 1965 [York] cardiogram *and they should have immediately recommended to Dr. Ayers that Mr. York be committed to a hospital for treatment in the hope of preventing an acute heart attack; but instead they let him go home, with a false sense of reassurance,* and that Mr. York died the next morning about 5:00 o'clock from an acute myocardial infarction. * * * " (Emphasis supplied.)

I told the jury it was their duty to determine the facts from the evidence and draw the reasonable and proper inferences therefrom.

Thus, it appears that the instructions did not limit the plaintiff's contentions of negligence solely to the issue of whether Dr. Bishop should have caused Mr. York to be hospitalized, but embraced the failure of the defendant's doctors to notify Dr. Ayers, York's personal physician, and Mr. York himself of his allegedly serious condition.

*Reason No. 2*

 Plaintiff complains that he was deprived of a 12-man jury. Local Rule 33 provides:

"In all civil jury cases the jury shall consist of six members. * * * "

A similar complaint was rejected by Judge Teitelbaum of this court in Piper v. Monessen Southwestern Railway Company, Civil Action No. 70–646 (W.D.Pa. 10/3/72).

A similar rule has been upheld in Cooley v. Strickland Transportation Company, 459 F.2d 779 (5th Cir. 1972), and in Colgrove v. Battin, 456 F.2d 1379 (9th Cir. 1972).

I think Local Rule 33 is valid.

An appropriate order will be entered.