Bellacosa, J.
(dissenting). I respectfully dissent and vote to reverse the order of the Appellate Division and reinstate the judgment of Supreme Court, predicated on a jury verdict in favor of the plaintiff for $983,000.
This Federal Employers’ Liability Act (FELA) action to recover for permanently disabling back injuries sustained while plaintiff was employed as a police officer by the defendant Conrail is governed exclusively by well-settled Federal law principles (see, Basham v Pennsylvania R. R. Co., 372 US 699, 700-701, revg 11 NY2d 991, citing Lavender v Kurn, 327 US 645). Additionally, under New York precepts of appellate review, the evidence presented to the fact finder, usually a jury, at trial must be construed in the light most favorable to plaintiff (Lane — Real Estate Dept. Store v Lawlet Corp., 28 NY2d 36, 42; see also, Cohen v Hallmark Cards, 45 NY2d 493).
On March 6, 1984, plaintiff was driving a Conrail company car, No. 360, at approximately 40 to 45 m.p.h., when the car came to an abrupt stop, skidded and threw him forward and *749 across the driver’s seat. Car No. 360 was used on a daily basis by plaintiff and two other police officers on their respective duty shifts. In a typical work day, hundreds of miles would be travelled in the car. At the time of plaintiff’s accident, car No. 360 had been driven at least 164,000, and more likely 264,000, miles.
A Ford Motor Company engineer called as an expert witness by defendant Conrail stated on cross-examination that due to the additional abuse and stress placed on police cars, 150,000 miles on such cars would be "harder” miles than those accumulated on ordinarily used cars; also, parts wear out faster than those on nonbusiness used cars with similar mileage. The expert witness also stated that, at the odometer range of car No. 360, parts would be constantly wearing out and breaking; and that if something had broken off and jammed into the gears or the differential, this could cause a car to slow down or stop abruptly. Plaintiff testified that car No. 360 had done just that at the time of the accident.
Defendant Conrail also presented testimony of its service manager, who inspected car No. 360 after the accident. While this witness on direct examination refuted plaintiff’s account of how the accident happened, he acknowledged on cross-examination that he had not inspected either the transmission or the emergency brake cable, and that it was possible that a malfunction in either of these parts could have caused the wheels to lock up, as plaintiff described the happening and cause of the accident.
This testimony, in conjunction with the documentary evidence, which established that car No. 360 needed repairs frequently and was the subject of complaints on numerous occasions by all three of the officers who drove it, supports the inference that car No. 360 was subject to the degree of wear and deterioration attributed by defendant’s expert witnesses to police cars at this odometer range. Plaintiff testified that since it had been assigned to West Haverstraw, the car made several unexplained noises, including "whooshing” and "grinding” sounds, and that each time the vehicle stopped he would hear a "hard clunk”.
One of the officers testified that in 1982, when car No. 360 had approximately 140,000 miles on it, and again in 1983, he experienced the same problem with it that occurred on the date of plaintiff’s accident, i.e., the car would come to an abrupt stop and then not be operational for a few minutes. *750 Plaintiffs co-officer added that he complained to his superiors, both orally and through his daily vehicle report sheets. He also mentioned the trouble to plaintiff and to the third co-officer operator. Most relevantly, this witness complained about the performance of, and trouble with, car No. 360 on March 5,1984, the day before the accident, with respect to the very problem plaintiff described as the happening of the accident.
Conrail required its officers to report any problems with cars to their supervisors. Plaintiffs problems were noted in his daily vehicle reports, as were those of his co-officers. The supervising lieutenant at the time of the accident testified at trial as a witness for Conrail that it was his responsibility to oversee the maintenance of the cars. He admitted that he did not usually look at the daily vehicle reports because it was not "necessary”.
Under traditional appellate review standards, and especially under the strictures governing a FELA jury verdict, courts cannot devalue or disregard substantial portions of testimonial and documentary evidence simply because it was presented by defendant’s witnesses. In any sufficiency of the evidence review situation, appellate courts must consider all the evidence, including that which is presented by or elicited from a defendant (National Bank v Systems Home Improvement, 69 AD2d 557, 562, affd 50 NY2d 814). The Appellate Division in this case alluded to only the evidence presented by the plaintiff and stated that as a matter of law "that evidence” was insufficient (178 AD2d 318, 320). The appellate court evidently failed to consider the evidence adduced on defendant’s case which, ironically, happened to be in considerable aid of plaintiffs case. This failure to reflect adherence to the correct and complete standard of review supports a reversal in this case.
More compelling, still, for reversal is the evident disregard by the reviewing appellate courts of the governing Federal standards as they should be applied to this case. Under Federal law, a FELA case must be sent to the jury — and its verdict must be accorded a unique level of deference — when the plaintiff has presented proof, which may be entirely circumstantial, "from which the jury may with reason” infer that the "negligence of the employer played any part, however small, in the injury or death which is the subject of the suit” (Rogers v Missouri Pac. R. R. Co., 352 US 500, 508 [emphasis added]). That "low and liberal” formula — a filament-thin standard among the slightest known to the law, short of insurer- *751 type strict liability — is the exclusive governing standard (Smith v National R. R. Passenger Corp., 856 F2d 467, 469, quoting Diebold v Moore McCormack Bulk Transp. Lines, 805 F2d 55, 58).
Notably, Atchison, Topeka & Santa Fe Ry. Co. v Toops (281 US 351) does not lend support to the Appellate Division’s reversal of this jury verdict. Examined in the context of the more refined governing principles and precedents, Toops merely stands for the proposition that a jury verdict in a FELA case may not be based entirely on speculation (id., at 354-355). The nuance is that a verdict may involve some speculation when "the evidence is such that fair-minded [individuals] may draw different inferences” (Lavender v Kurn, 327 US 645, 653, supra). Thus, speculation is essentially irrelevant and not dispositive, as long as it does not displace probative facts and permissible inferences drawn from evidentiary facts (Tennant v Peoria & Pekin Union Ry. Co., 321 US 29, 32-33, reh denied 321 US 802). In both Lavender and the instant case, there was circumstantial evidence to support the plaintiff’s theory as to the cause of the injury and the negligence of the employer (see, Lavender v Kurn, 327 US 645, supra). They thus differ materially from Toops, where there was no proof of any kind and only speculation.
In the instant case, plaintiff offered, as a layperson driver, direct evidence of what happened. On this base, complemented by defendant’s significant additional expert and documentary proof and plaintiff’s evidence of frequent repairs and complaints, plaintiff built the inference that the employer was negligent. The employer either failed to seek or locate the source of the problem with car No. 360, or neglected to take car No. 360 out of service when the employee-drivers’ complaints could not be rectified. Under the slim minimum requirements of Federal law, the jury is also allowed to infer negligence solely from the failure of the employer’s supervisor to review the daily vehicle reports in which operator-employees had documented the persistent problems with car No. 360 —the very types of things that happened in the pertinent accident. The fact that these inferences of negligence may, as the majority accentuates, include some degree of speculation, should not be fatal to plaintiff’s case, because the inferences are in significant part supported by the whole of the proofs at trial (see, Rogers v Missouri Pacific R. R. Co., 352 US 500, 508, supra). Even under the relatively more demanding review requirements of New York in traditional negligence cases, the *752 evidence in this case was sufficient to sustain the jury’s verdict (see, Cohen v Hallmark Cards, 45 NY2d 493, supra; see also, Noseworthy v City of New York, 298 NY 76, 79).
Significantly, Basham v Pennsylvania R. R. Co. (372 US 699, revg 11 NY2d 991, supra) points to reversal and reinstatement of the jury verdict in the instant case, the very result decreed by the United States Supreme Court in that case. There, the employee was injured when a platform on which he was lying moved, causing him to drop a 100-pound wheel spring onto his left index finger, which was later amputated. Defendant argued that it was impossible for the injury to have occurred as that employee alleged. The employee countered by introducing evidence of prior complaints in similar, relevant work-related situations. The United States Supreme Court found that the resolution of the conflicting testimony was the province of the jury and reversed our Court for having "invaded the function and province of the jury [by] setting the verdict aside” (Basham v Pennsylvania R. R. Co., 372 US 699, 701, revg 11 NY2d 991, supra). At the very least, the persistent prior complaints involving car No. 360, including one the day before the accident at issue, provide, in my view, greater and weightier evidence to support a jury verdict than was present in Basham.
Since a jury verdict in a FELA case may be overturned only "when there is a complete absence of probative facts to support” the verdict (Lavender v Kurn, 327 US 645, 653, supra; see also, Tennant v Peoria & Pekin Union Ry. Co., 321 US 29, 35, reh denied 321 US 802, supra; Basham v Pennsylvania R. R. Co., supra), no justification is presented for the appellate courts of this State again to invade and overturn the jury’s correct resolution of this case. Finally, in noting that so little is required to sustain a FELA verdict, I am puzzled as to how the Court can justify the result on this record. Therefore, I vote to reverse and reinstate the judgment in plaintiffs favor based on the jury verdict after a trial thoroughly fought out by both sides.
Acting Chief Judge Simons and Judges Kaye, Titone, Hancock, Jr., and Smith concur; Judge Bellacosa dissents and votes to reverse in an opinion.
Order affirmed, with costs, in a memorandum.